Tilghmán C. J.
having stated the case, delivered his opinion as follows : — The act which was passed 27th February, 1797, provides, that notes drawn in a certain form “ shall “ be held by the endorsees, discharged from any claim of defalcation, or set-off by the drawer or endorsers thereof, and “ the endorsees shall be entitled to recover against the draw- “ er and endorsers such sum as on the face of the said note, or “ by endorsement thereon, shall appear to be due.” Before the making of this act of assembly, the endorsee of a promis-' sory note held it liable to 'every set-off and species of defence legal or equitable*, of which the drawer might have availed himself against the payee. Suchhad been the construction put by our courts oii: the bid act of 1715, by which bonds, specialties,' and promissory notes were made assignable. *183 Upon the increase of commerce, and particularly after the-establishment of banks in the city of Philadelphia, it was found necessary to place promissory notes on a different footing. Being the instruments by which all loans by the banks were negotiated, it was essential that they should have all' that security which negotiable paper requires. For that pur-, pose the act of 1797 was made. It was intended to place the Philadelphia notes on an equal footing with notes in the. neighbouring states, and other parts of the commercial world. Prior to that act, we had been behind hand. But it was not intended to pass all at- once to a contrary extreme, and give the holders of our notes greater privileges than the interests of commerce require. The law merchant is founded on honesty and good fáith; and although the act of assembly does say in general terms, that the holder of the note shall recover the whole, unless the payments appear on the same paper, yet, from the nature of the subject, certain exceptions aré implied. For instance, the counsel for the plaintiff concede that if the holder received the note, knowing that payments had been made, he shall allow these payments. And why ? Because it would be fraudulent not to do so. But if actual notice will affect the holder, so also will implied; because the conséquences of actpal and implied notice are the same. Now if a man receives a note under circumstances which naturally excite suspicion, he ought to make further inquiry, and if he does not,, he takes upon himself the knowledge of all material facts, and the jury may presume that knowledge. One of the circumstances which have been held sufficient to excite suspicion, is the note being over-due. Before the day of payment, it is to be presumed that payment will be punctually máde. The note passes from hand to hand on that presumption, and its credit is entire. But not being paid, it appears on the face of the note that faith hath been broken, or that for some latent cause, it is questionable whether payment ought to be made. Paper thus cirrumstanced cannot circulate, and is not entitled to the protection of negotiable paper. In Chitty on Bills, (Philadelphia ed. by Byrne) 113, 114, is a collection of cases on the law respecting notes assigned' after they are due. Tó which may be added 1 Johns. Cas. 51. and O'Callahan v. Sawyer, 5 Johns. 118. But the note in question was not payable on any particular day, but on demand. At what time shall it be said that such *184 a note falls under suspicion ? For it may be that it has remained in the hands of the payee without any demand. Cases of this kind must depend upon circumstances: demand should be made in reasonable time, but according to circumstances different times are reasonable. When both parties live in the same city, a shorter time would be reasonable than when one lives at a distance from the other. In Furman v. Haskins, 2 Caines, 369, it was decided that a note payable on demand, endorsed eighteen months after date, was to be considered as over-due and dishonoured. In Lozey v. Duncan, 7 Johns. 70, such a note being endorsed 2§ months after date, it was left to the jury to decide whether over-due. In Ayre v. Hutchings, 4 Mass. Rep. 370, C. J. Parsons was of opinion, that after 8 months it was over-due. In the present case the payees lived in the city of Philadelphia, and the drawer about 180 miles from it, and-the first notice of the assignment was fourteen months after date. .Under these circumstances, it appears to me, that-when the case was submitted to the jury, the Court should have given them in charge that they were at liberty to presume notice of the payments. I am therefore of opinion, that the judgment should be reversed* and a venire de novo awarded.
Ye ates J.
The only difficulty which this case presents to my mind, arises from the strong expressions made use of in our act of 27th February, 1797. It directs* “ that all promis- “ sory notes bearing date in the city or county of Philadelphia, payable to the order of the payee, for value in account “ or for value received without defalcation, or without set-off, “ shall be held by the endorsee, discharged from any claim of “ defalcation or- set-off, by the drawer or endorsers thereof, “and-the endorsees shall be entitled to recover against the-“drawer and endorsers such sums as-on the face of the said; “ notes, or by endorsements thereon, shall appear to be due; “but the drawer or endorsers may set-off and defalk so far “ as the plaintiff shall be justly indebted to him.” Under the old -act of 28th May, 1715, it was adjudged in this-court, after-solemn argument, that the endorsee of a promissory note took it-subject to all equitable considerations, to which it was subject in the- hands of the original payee. 1 Dall. 17. Swift v. Hawkins, et al. Ib. 441. Primer v. Kuhn.
It-is not reasonable to suppose, that the legislature intend *185 ed by their law of 1797, that in all given cases the endorsees of notes without defalcation, should be entitled to the sums apparently due on the face of such notes, because in many instances this would lead to the grossest frauds. It was meant that notes of a certain description, when endorsed, should be placed in the situation of bills of exchange, and subjected to the restrictions of commercial usage. Three incorporated banks at that time existed in Philadelphia, and the state were large stock-holders in the bank of Pennsylvania. The operations of these banks were evidently facilitated and made more secure by such regulations, and were most probably in contemplation. Indeed it is admitted by the counsel of the defendant in error, that if he had known of the three different payments, amounting to §1580 04cts. having been made to Eaves and Wistar, prior to his receiving their endorsement, that sum could be legally set-off against him, notwithstanding the general words of the act. Where can be the differerence, except as to moral guilt, as to the legal consequence? of actual and constructive notice ? Knowledge of the existence of a conveyance, and its being duly recorded, have the same effects on subsequent purchasers.
The note here was made payable to the order of Eaves and Wistar on demand; and in such case, or where no time of payment is expressed, it is payable instantly on presentment. The .presentment for payment of such bill or check must be made within a reasonable time after the receipt of it. Chitty on Bills, 146. In the nature of the thing we must be governed by the circumstances of every case.
A bill may be transferred after the time appointed for its payment; but where the transfer is thus made, the assignee takes it subject to all the equitable rights existing between the person from whom he received it and the antecedent parties to the bill of which he was aware at the time of the transfer. The transfer of a bill after it is due is out of the common course of dealing, and of itself affords grounds for suspicion ; and it is therefore always left to the jury to presume that the endorsee was acquainted with the facts rendering the transfer unfair. 3 Term Rep. 83.
In the present case the note was dated 14th March, 1806, and the first information given to the drawer of the endorsement, was by letter dated 6th May, 1807. Five days after the note was drawn, §512 were paid upon it, and yet although *186 it has been held back nearly 14 months, after it might have been presented, it is sought, to debar the drawer of the benethis, as well as the two subsequent payments.
Different cases in our sister states have established their ideas of the commercial law on this subject. In Furman v. Haskin, 2 Caines, 369, a promissory note payable on demand, negotiated eighteen months after it was made, was so far considered to be dishonoured, that the endorsee was deemed to have taken it on the credit of the endorser, and subject to all the equities existing between the original parties. The authority of this case is recognised in Sandford v. Mickles and Ferman, 4 Johns. 227, wherein the Couit say, that each case ought to be governed by its own peculiar circumstances. And in Lozen v. Duncan, 7 Johns. 70, the time was greatly narrowed. A note payable on demand, endorsed 2§ months after it was given, it was held that the defence was fully open against the endorsee. So also in Ayres v. Hutchins, 4 Mass. Rep. 370, where a note payable on demand was endorsed eight months afterwards, it was adjudged that the endorsee had reasonable grounds of suspicion, and took upon himself to inquire into the facts, previous' to this note coming into his hands. Other authorities might be cited to this point. I am fully satisfied, under the suspicious circumstances of this case, that the fact of constructive notice to the defendant in error of these payments, ought to have gone to the jury, and therefore that the judgment of the Court of Common Pleas be reversed, and a new trial be awarded.
"Brackenridge J. concurred.
Judgment reversed.