[PHILADELPHIA, MARCH 27, 1829.]

## GRIFFITH *against* REFORD.

### IN ERROR.

In an action against the endorser of a promissory note, the drawer, to whom the defendant has executed a release, is not incompetent as a witness for the defendant, on the ground of interest, though he has given to the endorser a judgment and mortgage, to secure him against the endorsement.

But he is incompetent, (on the ground that a witness cannot impeach a writing he has given,) to prove that the consideration of the note was usurious; that the endorser was in fact the lender, and that the security was put into a negotiable form, merely for the sake of convenience.

ON a writ of error to the District Court for the city and county of *Philadelphia*, it appeared from the bills of exceptions returned with the record, that *Caleb Griffith*, the plaintiff in error, brought this action to recover the amount of four promissory notes, drawn by *Thomas L. Plowman* in favour of *Elizabeth Reford*, the defendant, by whom they were endorsed, and also to recover the amount of a bill of exchange, drawn by *L. Mansell* on *J. J. Marshall* of *Frankford, Kentucky*, in favour of *Thomas L. Plowman*, by whom, as well as by the defendant, it was indorsed.

One of these notes had its origin in a transaction between the plaintiff and the said *T. L. Plowman* in the year 1803, and another of them originated in a transaction between the same parties in the year 1809. Notes were then given, which were renewed from time to time until the year 1819, when the notes upon which the present suit is founded were given.

On the trial of the cause in the District Court, after the notes and bill of exchange above mentioned had been given in evidence by the plaintiff, the defendant offered *T. L. Plowman*, the drawer of the said notes and the endorser of the bill of exchange, as a witness to prove that the consideration of the notes was usurious, the defendant having, at the bar, given him a release from all liability to her. The counsel for the plaintiff objected to his competency, but the court overruled the objection, and sealed a bill of exceptions.

After having been sworn, the witness stated that he had given a judgment and mortgage to the defendant, to secure her from loss, in consequence of the notes given in evidence. The judgment was entered in the District Court for the city and county of *Philadelphia* on the 5th of *December*, 1818. The record of this judgment was then produced by the counsel for the plaintiff, who objected to the further examination of the witness; but the court again overruled the objection, and a second bill of exceptions was tendered and sealed.

The counsel for the plaintiff then objected to the examination of the witness, as to the consideration of any other notes than those which formed the foundation of the suit; but the court overruled the objection, and permitted the witness to give evidence of any

(Griffith *v*. Reford.)

usurious consideration, from the first note which passed between the parties, up to the notes on which the suit was brought, through their successive renewals. The opinion of the court, in permitting this evidence to be given, was the ground of a third bill of exceptions.

In these several opinions of the court below, error was assigned in this court, where

*A. Randall* and *J. Randall,* for the plaintiff in error, cited *Chitty on Bills,* 443. *Sterling* v. *The Marietta and Susquehanna Trading Company,* 11 *Serg. & Rawle,* 179. *Conrad* v. *Keyser,* 5 *Serg. & Rawle,* 370. *Hayes* v. *Grier,* 4 *Binn.* 83. *Walton* v. *Shelley,* 1 *T. Rep.* 300. 1 *New Hamp. Rep.* 60. *Kirk,* 166. 3 *Mass. Rep.* 27. 4 *Mass. Rep.* 156. 6 *Mass. Rep.* 499. 7 *Mass. Rep.* 199. 10 *Mass. Rep.* 502. 17 *Mass. Rep.* 94. 3 *Johns. Cas.* 185. 2 *Johns. Rep.* 165. 15 *Johns. Rep.* 270. 17 *Johns. Rep.* 176. *Stille* v. *Lynch,* 2 *Dall.* 194. *Shaw* v. *Wallis,* 2 *Yeates,* 17. *Baring* v. *Shippen,* 2 *Binn.* 165. *Baird* v. *Cochran,* 4 *Serg. & Rawle,* 398. 9 *Serg. & Rawle,* 229. 2 *Hayw.* 298. 2 *Hawks.* 238. 3 *Dess. Rep.* 223. *Cropper* v. *Nelson,* 3 *Wash. C. C. Rep.* 125. 4 *Esp. Rep.* 11. 10 *Mass. Rep.* 121. 10 *Wheat.* 367. *Lewis* v. *Morgan,* 11 *Serg. & Rawle,* 234.

*Kittera* and *Chauncey,* for the defendant in error, cited, 7 *T. Rep.* 62. *Starkie on Evid. Pt.* 4, 298. *Baird* v. *Cochran,* 4 *Serg. & Rawle,* 398. *Baring* v. *Shippen,* 2 *Binn.* 154, 165. *Boyce* v. *Moore,* 2 *Dall.* 196. 20 *Johns. Rep.* 285. 16 *Johns.* 7. 15 *Johns.* 270. 1 *Cra.* 194. *Blagg* v. *The Phœnix Ins. Co.;* 3 *Wash. C. C. Rep.* 5.

The opinion of the court was delivered by

GIBSON, C. J.—The objection to the witness, on the ground of interest, is not sustained; but, it seems to me, he was incompetent under the rule in *Walton* v. *Shelley,* to prove that the consideration was usurious. That rule is undoubtedly restricted to paper actually negotiated; and it consequently has no place between the original parties. But how did the case stand when the witness was called? Apparently between an endorser and endorsee; and the question therefore is, not whether the witness was competent to prove the consideration usurious, in a case admitted to be between the original parties, but whether he could, by his own evidence, remove an apparently well founded objection to his own competency: and I take it he could not. If he might make way for his testimony in chief by taking his case out of a rule which *prima facie* furnishes a valid objection to it, he might as well testify in chief in the first instance; for if he were competent for the one purpose, he would necessarily be so for the other. But a witness cannot open his lips for any purpose whatever, while an original objection to his competency remains. It would seem, therefore, that the court erred in admitting the witness exclusively on the credit of his own evidence,

(Griffith *v.* Reford.)

that the endorsee was in fact the lender, and that the security was put into a negotiable form merely for the sake of convenience.

HUSTON, J.—The plaintiff in error, who was plaintiff below, sued Mrs. *Reford*, as endorser on four several promissory notes, all dated in 1819, but on different days, and payable at different times. These notes were all drawn by *Thomas L. Plowman*, payable to Mrs. *Reford*, and by her endorsed. There was also, by consent, a bill of exchange included in the verdict, about which there was no dispute. The pleas were the general issue, and a special plea of usury, and issue. At the trial of the cause, it was offered to prove, that more than twenty years ago the dealings between *Plowman* and the plaintiff began in a loan of money by *Griffith* to *Plowman* at usurious interest, which money was secured by notes drawn by *Plowman* and endorsed by the defendant; that the defendant never had any interest in the notes or communication with the plaintiff, but endorsed at the request and for the accommodation of *Plowman*, her brother. The loan was originally about seven hundred dollars, and by renewing the notes and including usurious interest, it amounted to about six thousand dollars; that is, to about four thousand dollars more than the debt and legal interest. The notes in question were a renewal of former notes, and the last were for principal and legal interest on those immediately preceding them. *Plowman* had, in 1818, given his sister, the defendant, a judgment and mortgage to secure her from all responsibility on account of her said endorsements; and she had executed a full release of all claims and demands whatsoever, to that date; and particularly of all claim or demand on account of this suit, &c.

The plaintiff objected to him as a witness, and the court admitted him to prove the whole case. Though divided into three bills of exceptions in the court below, I shall consider the whole together.

The case of *Walton* v. *Shelley*, was, for the thousandth time, brought up and relied on. It is strange that a case standing alone, supported by no prior and no subsequent decision, should still, once each term, give us employment for a day, more or less. Lord MANSFIELD brought the principle from the civil law, and engrafted it on the common law, but it never grew. While the judges who decided *Walton* v. *Shelley* continued on the bench, it had a kind of sickly existence. With them the doctrine *quod nemo allegans suam turpetudinem est audiendus* became extinct, and in the *English* and in our system, is, I think, in no single instance true. That a person who has made or endorsed a note, and put it in circulation, until it has got into the hands of an innocent holder, shall not prove that it was void before he endorsed or negotiated it, depends, not on that maxim, but on a distinct principle. See 6 *Serg. & Rawle*, 115, to be cited more fully hereafter.

Notes and bills, in modern times, enter so largely into the transactions of men, that it has been considered necessary to adopt par-

(Griffith *v.* Reford.)

ticular rules as to them,—to give them a sanctity not attending, in all cases, the transfer of other personal property. Either the ideas of lawyers, and judges too, were vague and confused, or the reporters did not give us really what was said. The interest of commerce never required that counterfeit money should pass current, or that forgery should be protected or encouraged. It did require that he who had passed to an innocent person, for valuable consideration, counterfeit money, or a forged note instead of money, should be held liable for so much good money; and he who had passed such money or note, and was proved to have done so was liable; and his endorsing the note being full evidence that he passed it, he was said to be liable on his endorsement, which, in truth, was only the evidence of his liability, which liability depended on general principles of justice; the same which made him liable in the sale of any other article which was not his own, or which was not what he represented it to be. Hence, very soon it was discovered to be absolutely necessary to admit as witnesses, men who had once owned a note, and whose names were on it, to prove facts which rendered it worthless, but which had taken place after such witnesses had parted with it.

The laws forbid gaming, usury, &c.:—the interest of commerce never required the laws of the country to be set at naught, or that criminals should escape punishment; but if a gaming debt or a usurious contract becomes valid when put into the shape of a negotiable note, the law is repealed by the court; and the judges, except in *Massachusetts,* have not said, that a security declared void in every form, shall be good in one particular form, and that the shortest and most easily adopted.

All paper in the form of negotiable notes is not at all times considered negotiable; for example, a note after it is due; and in every country, I believe, the consideration of a note negotiated after it is due, may be inquired into, and those who endorsed before it was due, are witnesses in any suit on it, if disinterested. See *Cromwell* v. *Arrott,* 1 *Serg. & Rawle,* 180, and cases there cited.

Fairness and honesty are as essential to mercantile prosperity, and as important in dealings with mercantile paper, as in any other department of life: hence it was long ago, and still is most clearly held, that the person who claims to recover on mercantile paper, must, if there is any objection to it, show that he is a *bona fide* holder. If he was concerned in giving it a taint, if there is any thing unfair or illegal about it, and he was one of those who made it so, he ought not and will not derive any advantage from its being in a negotiable form.

There was a time when counsel in argument, and perhaps judges, talked about a drawer or endorser being a witness for one purpose, and not for every purpose. This seems to be over. A witness in chief, must be sworn, among other things, to tell the whole truth; and, if so sworn, must do so or be perjured, with the exception of

(Griffith *v.* Reford.)

not telling what will subject himself to criminal prosecution. And, if the matter offered in evidence can be proved by *a* witness, it can be proved by *any* witness who is not infamous and not interested.

For the law on this subject of the drawer or endorser of a bill, and maker or endorser of a note, being a witness in a suit on that bill or note, I shall refer to *Chitty on Bills*, 412, 413, and the following pages: and the result is, that in every case where the party offered is disinterested in the event of the cause trying, or equally liable to both parties, he is a witness; and, if liable to costs to one party, a release by that party renders him competent; and that the drawer or endorser, in a suit against the acceptor, may be a witness for the plaintiff to prove the acceptance, or for the defendant to prove it void, as having been discounted on a usurious consideration; or that it had been paid; or that it was not recoverable for any of the causes which would avoid it, if proved by a person through whose hands the note never passed. An act of parliament has been passed, enabling him who holds a note given on a usurious consideration, without notice and for valuable consideration, to recover on it.

In *New York* they adopted the *English* rule in broad terms in *Winton* v. *Saidler*, 3 *Johns. Cas.* 185. The good sense and profound learning of their judges soon discovered that exceptions were necessary; and it is now fully settled there, that the maker or endorser of a note may prove any facts which go to show that it ought not to be recovered by a holder who had notice of those facts when he took the note. See 10 *Johns.* 231. *Woodhull* v. *Holmes*, 15 *Johns.* 270. In 17 *Johns.* 176, the above cases are reviewed and sanctioned; and it is said, if a man puts his own name on a note which is void, and gives it currency, he shall not, as against a *bona fide* holder, be permitted to say it was tainted when it passed from his hands; but if it receives its taint when it is negotiated to the party plaintiff, by the facts then happening, an endorser whose name is on it, may prove those facts. The witness was the second endorser, and the suit was by the third endorser against the first.

The case in 20 *Johns* 285, sanctions all these cases, and decides, that in a suit by the usurious holder against the maker, the payee and endorser is a witness to prove the whole case; and, further, if a note be made for the purpose of raising money, and it is discounted at a premium higher than the legal rate of interest, and none of the parties whose names are on it could, as between themselves, maintain a suit on it when it became mature, provided it had not been discounted, then such discounting would be usury. And this, and the case in 17 *Johns.* 176, decide, that if a note, void for usury, is endorsed *bona fide* for good consideration to an innocent person, and the maker of the note take it up, and give a new note, this latter is good; but if the new note is given to the person who was himself the usurer, to take up a former usurious note or notes, without any new consideration, this last note is equally infected as the first.

(Griffith *v.* Reford.)

A mere change of security for the same usurious loan, to the party who committed the usury, or to one who had notice of it, can never purge the original transaction or give a right to recover. I have said the decisions in *Massachusetts* are different.   4 *Mass. Rep.* 157, decides that neither the maker nor endorser is a witness to prove the note void against the endorsee, who was himself the usurer, and plaintiff.   The distinction between an innocent holder and a culpable one, though it would seem a very obvious one, did not strike the court. The whole reasoning is on the ground, that the plaintiff is an innocent and *bona fide* holder.   "A note," says the judge, "is offered to the merchant or farmer in payment for goods or produce: all he has to do is to look at the names on the note."   And, again: "It would encourage fraud, by enabling the parties to enjoy the fruits of it, and throw the mischievous consequences of it on an *innocent endorsee.*"   And this decision is persisted in, as to usurious notes, up to 10 *Mass. Rep.* 502; and is the more remarkable, because in 6 *Mass Rep.* 430, an endorser is held a witness to prove a fact occurring when the plaintiff received the bill from the witness, showing that he ought not to recover.   And, again, in *Storer* v. *Logan,* 9 *Mass. Rep.* 55, in an action by the endorsee against the drawer, the endorser was admitted to prove, that at the time of endorsing, he communicated certain conditions and restrictions as to his right to draw the bill.   Here the difference between the innocent and *bona fide* holder, and one with notice, seems distinctly recognised.   In 4 *Mass. Rep.* 370, the doctrine that an endorsee who has a note to which he knew of objections when he took it, or even if he took it under circumstances which ought to excite suspicion, holds it subject to all exceptions which could be made to it in the hands of the payee, seems to be fully and repeatedly recognised.

I come now to cases in our own courts.   In 2 *Dall.* 92, it is said, "A man may, *bona fide, purchase* any security for the payment of money, at the lowest rate he can, without incurring the penalties of usury."

The rule in *New York* is, it would seem, or rather, was fully established, though expressed in other words.   In *Baird* v. *Cochran,* 4 *Serg. & Rawle,* 398, it was decided, that to exclude parties whose names were on the bill, but who were not sued, and not interested, the note must not only be negotiable, but must have been actually negotiated in the usual course of business: in other words, must be in the hands of the plaintiff *bona fide* without notice.   This had been before decided in *Cromwell* v. *Arrott,* 1 *Serg. & Rawle,* 185, on great consideration, and said in *Baring* v. *Shippen.*   And the very point came up the next year.   In *Hepburn* v. *Cassel,* 6 *Serg. & Rawle,* 115, Gibson, Justice, (now Chief Justice,) goes into a pretty full consideration of the question, and says, "When, therefore, the contest is between the original parties, or between the drawer and a person who has not become the holder by the usual

.(Griffith *v.* Reford.)

mercantile endorsement, there is no ground for the application of the rule." And, again: "The true ground of the rule is *policy*, which interposes its protection only in favour of third persons, who, *in the common course of business*, have become the holders of paper strictly negotiable."

The case of *The Bank of Montgomery* v. *Walker*, 9 *Serg. & Rawle*, 229, although a wide range was taken, yet recognises one ground sufficient for the plaintiff,—that the fact relied on by the defendant, was not known to the bank when it gave full consideration for the note, and, the case concludes by stating, without notice had paid the full value. It was decided on the principle that the instrument was negotiable, and negotiated to the bank ignorant of the defence set up. In page 336, DUNCAN, Justice, says, "The rule that a man whose name is on a note or bill, shall not be a witness, has been restrained here to negotiable instruments, properly so called, and negotiated in the ordinary course of business, before due." And the only grounds on which this part of the case is put, are, that they were liable for costs to the defendant, if a recovery was had against him, and that they did not tell the bank, when they offered the note for discount, what they were offered to prove in court.

In *England, New York, Massachusetts*, and most other countries, notes given for gaming or usurious considerations are declared void *by statute*. In this state the security *is not declared* void, but it is expressly enacted, that no person shall take, for the loan or use of money, more than six *per cent. per* year, and a penalty is inflicted. It is so well settled in this court, as well as others, that no action can be supported on a contract made in express violation of an act of assembly, that I shall not dwell on that.

Among the rules of most general use and effect, is one, that no court shall give such construction to a statute as to render it nugatory; and a corollary as strong is, that no court can give such application to the rules of practice or of evidence, as to destroy an express legislative enactment.

The discussion of the policy of laws against usury I shall not meddle with. They exist in all countries where there is a government; and, if no where else, it is enough for me that it is prohibited here. If it were not, this case, presented to any legislative body, would produce a law.

My opinion is, that if the transaction was really a loan on the one side, and a borrowing on the other, more than legal interest cannot be recovered; and it is immaterial whether the security is bill, note, bond, judgment, or mortgage; and that any person not infamous, not interested in the event of the cause trying, is a witness to prove any and every part of the case; that the rule of supposed mercantile importance, does not in this, or any other case, apply in favour of a plaintiff who is himself the wrong-doer; and, if it otherwise would apply, I hold that an act of assembly will control and change any rule of evidence or practice; and the application

(Griffith *v.* Reford.)

of this rule, in such cases as this, annuls the act and makes it in-
operative; and I believe all previous decisions in this state war-
ranted the District Court in admitting the evidence, and in their
direction to the jury on that evidence.

Tod, J., concurred with Huston, J.

Judgment reversed, and a *venire facias de novo* awarded.