The Court took time for advisement, and their opinion was after-wards delivered as follows by
Parsons, C. J.
This is an action of the case on a promissory note, sued by the endorsee against the promisor.
The parties have stated a case, and have submitted to the Court to enter judgment according to the law resulting from the facts thus disclosed.
The defence is usury, and two questions are made for the decision of the Court, viz.: 1.Whether, in this action, the endorsers are competent witnesses to prove the contract usurious; and, 2. If they are, whether, from the facts disclosed by their testimony, the contract is usurious.
As to the first question, the defendant has argued that the endorsers are competent witnesses ; because they are not interested in the event of the suit, and have not been sentenced for any infamous crime.
The plaintiff admits the general rule advanced by the defendant; but he has argued that there are exceptions to that rule, and among them it is one, that the parties to a negotiable security shall not be admitted as witnesses to prove the security originally void.
*146 Let us consider this question as supported by the authority ot adjudged cases. The first case, in which it is determined that wit nesses of this description, and for this purpose, should be admitted is Jordaine vs. Lashbrooke & Al. In that case, the endorsee held a bill of exchange unstamped, purporting to be a foreign bill not liable to the stamp duties. The drawer was admitted to prove that the bill was in fact drawn in London, but was dated abroad, to defraud the public revenue of the nation.
Before that case, we find no report, where the question was decided, until the case of Walton vs. Shelley. There the parties to the negotiable security were not admitted to prove it [*160 ] usurious, because it was a rule that no man should * be allowed to defeat, by his testimony, a security to which he had given credit as a party. And this rule was supported by a maxim of the civil law, prohibiting every man from alleging his own turpitude, (a) In this case, the counsel for admitting the witness agreed to the rule, and endeavored to show the case not within it. In Bent vs. Baker, this principle is recognized by Lord Kenyon, if the reporter was not mistaken, and certainly by Judge Buller, who confined it to negotiable securities. But in the case of Jordaine vs. Lashbrooke & Al., Lord Kenyon denies that he recognizes this prin ciple. If Peake's reports are worthy of credit, — and I have nevei heard their authority questioned, — Lord Kenyon certainly recognized this principle in the cases of Charrington vs. Milner (6) and Humphrey vs. Moxon; (7) and in Phetheon vs. Whitmore (8) the same principle is admitted by Buller, J.
In Adams vs. Langard & Al., (9) involving the same question afterwards decided differently in Jordaine vs. Lashbrooke & Al., Lord Kenyon admitted the drawer to prove the bill to be drawn in London, and for this cause a new trial was granted, but against his opinion. In Rich & Al. vs. Topping, (10) Lord Kenyon persevered in his opinion, and admitted the drawer to prove the note usurious ; and afterwards, in Jordaine vs. Lashbrooke óp Al., two other judges concurred with him, but Ashurst, J., adhered to the former rule. And it appears from the case of Hart vs. McIntosh, cited by the plaintiff, that the Common Pleas then adhered to the rule laid down in Walton vs. Shelley.
From this short review of the adjudged cases, no conclusion, on either side, can with certainty be drawn. When we revert to the decisions of this Court, the practice has been uniform. More than *147 twenty years ago, after a full argument, the Court unanimously decided that the testimony of the parties to the note should not be admitted; and the decision has been uniformly adhered to. In this Court, therefore, there has been no diversity of practice; and if we #admit the endorsers in this case, [ * 161 ] we must overturn a series of our own decisions.
Let us now examine the question upon the principles which relate to public convenience and to private morals.
It need not be remarked that, when the consideration of a nego liable security is against law, yet on that account the security cannot, by the common law, be avoided in the hands of a bond fide purchaser not privy to the illegality of the consideration. But, by statute, usurious and gaming notes are made void, when holden by an innocent purchaser for valuable consideration. We, therefore, consider the question as applying generally to notes of this last description ; because notes of the former kind, by being negotiated to any person ignorant, or who cannot be proved conusant of the original transaction, exclude the application of the rule in question.
The circulation of negotiable paper is extremely useful to trade, as it multiplies commercial credit, and the notes pass from man to man as cash. Any rule of law, tending unnecessarily to repress this circulation, is therefore against public policy. When .a negotiable note is offered to a merchant or farmer, in payment of his merchandise or produce, all he can look to are the names of the parties to the note, and all his inquiry is as to their solidity. Whether there be any secret canker, which will destroy the note, is unknown to him; and the parties are interested to conceal it, until he has given the note his confidence. And he may fairly presume that all, who have given the note a currency by their signatures, are honest men, and have not combined to defraud him. If, therefore, the parties to the usury, or the gambling, having received the fruits of their illegal contract, and having given a circulation to the note, can be admitted by their testimony to destroy it,—beside the injury to a fair purchaser, the negotiation of paper will be greatly checked, to the no small injury of the public.
But further considerations arise, if we regard the immoral ten dency of admitting these parties as witnesses. As the law abhors fraud, its rules of proceeding are framed so as to prevent fraud by detecting and punishing it. No man shall be admitted to allege his own turpitude, when the allegation will * tend to encourage or support fraud or illegality. Thus, [ * 162 ] in civil causes, the plaintiff shall not be permitted to show any illegality in his own conduct, to maintain his action; neither shall the defendant, in his defence, allege his own wrong *148 In civil or criminal suits, persons may be witnesses against theii accomplices, because their testimony tends to suppress fraud and injustice; and for the same reason, witnesses, whether subscribing witnesses or others, may disclose a fraud.
But, in the present case, to admit the parties to the illegal contract as witnesses, would not tend to suppress fraud, but to encourage it, by enabling the parties to it to enjoy all the beneficial fruits of it, and to throw the mischievous consequences on an innocent endorsee. For any man, by contrivance with another, may take up money of him at usurious interest, and give him a negotiable note for security. The promisee may sell it for a valuable consideration, and when the endorsee attempts to recover his money, the promisor and endorser may (at least by release) be witnesses for each other, and defeat the purchaser of his remedy, and quietly enjoy the money he has paid for the note.
We admit, as a general rule, that infamy and interest are the tests of the competency of witnesses. But to this rule exceptions are allowed. To preserve domestic harmony, and to secure to husband and wife an unrestrained confidence, neither is, in any case, admitted as a witness for or against the other. Also, it is well known that interested witnesses are sometimes admitted on prin ciples of convenience. A man robbed may be a witness in an action against the hundred for the robbery. And we are satisfied that the exclusion of parties to a negotiable security, from testifying that it was originally void, is another exception, established to assist commerce and to discourage fraud. We are, therefore, of opinion that the endorsers are incompetent witnesses in this case.
It is now unnecessary to decide the second question. A note may be sold at a greater discount than the legal interest, without being usurious. This generally happens when the holder doubts the solidity of the parties holden to pay ; and therefore sells it, without his own guaranty, at a greater than the legal [ * 163 ] discount, on account of the hazard. In the case * before the Court, the plaintiff took the guaranty of all persons, whoever had any interest in the note, and even of the broker. If a sale under these circumstances is not to be considered as usurious, it is not easy to conceive what sale is within the statute.
The defendant must either confess judgment, or be called.
Sedgwick, J.,
not having been present at the argument, gave no opinion. (b)

а) [This maxim is not applicable to witnesses. Phillips’s Ev., 8th ed., p. 40, 42 — Ed.]

 Peake’s N. P. 6.

 Ibid. 52.

 Ibid. 40.

 Ibid. 117.

 1 Esv. Rep. 176.

 [Vide Warren vs. Merry, 3 Mass. Rep. 27. — Parker vs. Lovejoy, 3 Mass. Rep. 565. _Barker vs Prentiss, 6 Mass. Rep 420.— Widgery vs. Munroe & Al., 6 Mass Rep. 449. — Jones vs. Coolidge, 7 Mass. Rep. 199. — Fox vs. Whitney, 16 Mass. Rep. 118. — Packard vs. Richardson & Al., 17 Mass. Rep. 127. — Manning vs. Wheatland, *149 10 Mass. Rep. 502, and note to that case. It is now well settled in the English courts, that a witness may be permitted to invalidate, by his testimony, an instrument which he has signed, circulated, or witnessed Phillips's Ev., 8th ed., p. 41. — Ed.]