The opinion of the Court was delivered by
Gibson J.
There is no colour for the pretence that Smith, the witness, had such an interest, as affected his competency ; for being liable, if at all, to Cassel or Perry, and not to the defendant, by whom he was called, his evidence, by defeating the recovery in this suit, would have called into immediate action, whatever liability he may have contracted, from his name being on the note. Whether he was in fact liable to any body, it is not only unnecessary, but very difficult to determine, especially as we know not under what agreement his name came on the paper; and as he was called to swear against his interest, the deposit was unnecessary to remove the objection on the score of interest. Then, as to the objection on the supposed applicability of the rule in Walton v. Shelley. That rule has been adopted here; but only as applicable to bills and notes strictly negotiable : nor do we, as Lord Mansfield did, found it on the maxim of the civil law, that no one is permitted to allege his own turpitude ; for that maxim, would embrace all the transactions of life, and cannot, therefore, I apprehend be the real foundation of the rule even in England, where, according to every common law principle of evidence, an accomplice in the most flagitious crimes may be heard. The true foundation of the rule, therefore, is policy, which in *116 térposes its protection only in favour of third persons, who, in the common course of business., have become the holders ’ of paper strictly negotiable. By strict negotiability, I mean, not only that which, under, the act of 1797, carries with it, an exemption from defalcation of matters, between the original parties, (foythe rule was adopted, before that act was passed, when all notes were taken by the indorsee, subject to such defalcation,) but also, that which depends on the Stat. 3 and 4. Anne, and our own act of 1715. Where, therefore, the contest is between the original parties, or between the drawer, and a person who has not become the holder by the usual mercantile indorsement, there is no ground for the application of the rule. Here we know not how Smith’s name came on the note. If, as it is said, it was intended to guarantee payment by the drawer, and could, in point of law, have that effect (which I, for one, deny,) still between the original parties, the rule would not operate. The question, then, is whether the original parties to the note, are the parties to the suit. The note was, in all respects negotiable, under the act of 1715, and the statute of Anne ; and the names of Smith, the witness, Cassel., the payee, and person in whose name the suit was brought, and Perry, for whose use it was brought, were endorsed in the order in which I have named them ; and yet, for some cause, which I cannot discover, the suit was brought in the name of Cassel. But the mere act of indorsing and delivering over, divested all Cassel’s property, so that no suit could be maintained in his name, while it remained on the back of the paper. It is true, that no objection having been made to the form of the action, his name was not, as it might have been, struck out at the trial: but that the suit was suffered to be maintained in his name at all, amounted to the same thing ; for by that, all parties shewed they were content to treat the note as if it had never been negotiated: the plaintiff could not have stood for a moment on any other ground. WV are certainly, therefore, to consider Cassel, as the legal party. Then what is the nature of Perry’s interest? If the note was, in fact, negotiated to him in the usual course, (which we might, from the indorsements be inclined to think,) he has chosen to treat the matter differently, by not bringing, as he might have done, the suit in his own name; in which case, notwithstanding the order in which *117 the names appear, Smith, must necessarily have been con-. sidered a prior indorsee. As it is, although the Court, iri case of an equitable assignment, will, for many, purposes, look to the real party, and might, even here, treat Perry as such, yet, for protection under the rule, it is impossible to treat him as an indorsee, because he chose not to treat himself as such, but as a person having an equitable interest, acquired out of the common course of business ; and although he may, in fact, be the real party, still the policy of the rule does not extend to paper, either not negotiable at ail, or negotiated out of the usual course, so as not to give the holder an action in his own name. But here the suit was brought in the name of the payee, which cannot be done, where a note is negotiated, so as to give the indorsee an action. An objection to the form of the action, might have been obviated at the trial, by striking out the names of the payee and indorsees, or indeed of the first alone; but that, by openly leaving the controversy to the original parties, would have removed even all apparent ground of objection to the witness. But although no objection was made, yet as the suit was actually sustained, we are to view it as standing, for every- purpose, exactly on the ground on which, alone, it was sustainable. We are of opinion, therefore, that Smith was a competent witness.
Judgment reversed, and a venire facias <je novo awarded.