## Harrisburg Bank *against* Forster.

It is a good cause of challenge to a juror that he is the tenant of one of the plaintiffs.

In an action against the maker of a note, by the holder, whether the endorser be a competent witness for the defendant, depends upon the character of the evidence which he is to give; he is incompetent to establish a want of consideration for the note, but it seems he would be competent to prove a direct payment of it by the maker.

In an action by the holder of a note against the maker, a check drawn by the defendant on the bank, is not competent evidence, without previously showing that the drawer of it had funds with which to pay it.

It is error for a court so to charge the jury upon matters of fact, as to mislead them from the true point of inquiry.

ERROR to the common pleas of *Dauphin* county.

The Harrisburg Bank against John E. Forster. This was an action of debt upon a promissory note of John E. Forster to John Forster, endorsed to the plaintiff, dated 22d of August 1834, for 700 dollars, at ninety days.

A jury being called in this cause, the defendant challenged Josiah Jones, a juror, for cause, because he is a tenant occupying the land of Thomas Elder, who is a stockholder in the Harrisburg Bank—tenant from year to year on shares.

To which challenge the plaintiff objected, that this is not a ground of challenge, unless in ejectment for the land occupied by the tenant. Whereupon, the court sustained the challenge. To which the plaintiff excepted.

Defendant then offered the deposition of John Forster, and to accompany it with proof, that the sum of 6000 dollars was paid to the Harrisburg Bank and placed to the credit of John E. Forster, on the 13th of December 1833, and that the note sued for is one given in renewal of a note then held by said bank, wherein John E. Forster was drawer and John Forster endorser.

Plaintiff objected to the competency of the witness, because a verdict in this suit would be evidence in the next suit, which is brought on the same note against witness as endorser, and because the witness is interested. An endorser on a negotiable note, actually negotiated, is an incompetent witness. The negotiation referred to by witness is long before the date of this note, irrelevant, and not evidence under the plea of payment. Plaintiff has no notice of matters contained in this offer. Which objections the court overruled and admitted the evidence. To which opinion the plaintiff excepted.

[Harrisburg Bank v. Forster.]

City of Pittsburg, Allegheny county, ss.—In pursuance, &c., April term 1835, No. 267. John Forster, Esq., says, &c., that in the month of November 1833, and after I left the Harrisburg Bank, I offered to the board of directors of the said Harrisburg Bank, two promissory notes of Lyon, Shorb & Co. to John E. Forster, each for the sum of 3000 dollars; one thereof due in March 1834, without interest, and the other in August 1834, with interest, as I believe; with a request that the said notes would be discounted by said bank for the use of John E. Forster, part of the proceeds of which to be applied to the payment of John E. Forster's note for 3500 dollars, then held by the said Harrisburg Bank. I do not now distinctly recollect the precise form of these two notes; they may have been the notes of Anthony Shorb, endorsed by John Lyon, which the books of the Harrisburg Bank will fully show. On this application the board of directors declined to discount the said notes, as I was informed by Henry Walters, Esq., cashier of the said bank; I then represented to Mr Walters, that as the bank held the notes of John E. Forster, endorsed by me alone, the security of the bank would be increased by accepting the notes of Lyon, Shorb & Co., endorsed by John E. Forster, as also by me, which I agreed to do; with this representation I requested that the same notes would be again submitted to the board of directors of the Harrisburg Bank for discount, which was accordingly done; and the notes discounted on the express condition made by the board of directors of the Harrisburg Bank, as I was informed by Henry Walters, Esq., cashier of said bank, that said two notes would be endorsed by me; and on condition that the proceeds of both of said notes would be applied to the payment of John E. Forster's notes, then held by the said bank, on which I was the endorser. The discounts thus granted by the bank, were accepted by me, and the two notes were endorsed by me, upon the terms and conditions made by the board of directors of the said Harrisburg Bank above mentioned. To fulfil the agreement on my part, I checked over the proceeds of the said two notes to John E. Forster's account current in said bank, to be by him, the said John E. Forster, appropriated to the payment of his notes in the Harrisburg Bank, endorsed by me as before mentioned, and in no other way. The proceeds of the two aforesaid notes were transferred to the account of John E. Forster by me, at the request of the said Harrisburg Bank, for the purpose aforesaid.  Jno. Forster.

Sworn and subscribed January 19, 1838, before

M. B. Lowrie, Alderman.

All the other facts necessary to an understanding of the points which arose in the case, are sufficiently stated in the opinion of the court.

*Alexander* and *Alricks*, for plaintiff in error.
*M'Cormick*, for defendant in error.

[Harrisburg Bank v. Forster.]

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned, is an exception to the opinion of the court below, sustaining the challenge of the defendant to Josiah Jones, being sworn or affirmed as a juror to try the issue, on account of his being the tenant of Thomas Elder, Esq., a stockholder in the bank, and therefore one of the plaintiffs. Challenges to the polls, *in capita*, being exceptions to particular jurors, are reducible to four heads, according to Sir Edward Coke, 1 *Inst.* 156; *propter honoris respectum; propter defectum; propter affectum*, and *propter delictum*. With the first we have little, if any thing, to do here: of the remaining three heads, the exception taken to the juror, called in this case, if it be a good cause of challenge, must be regarded as falling under the second, *propter affectum;* that is, for suspicion of bias or partiality. "This," says Sir William Blackstone, 3 *Comm.* 363, "may be either a *principal* challenge, or *to the favour.* A *principal* challenge is such, where the cause assigned carries with it *prima facie* evident marks of suspicion, either of malice or favour; as that a juror is of kin to either party within the ninth degree, &c., &c.; that he is the party's master, servant, counsellor, steward, or attorney, or of some society or corporation with him; all these are principal causes of challenge, which, if true, cannot be overruled; for jurors must be *omni exceptione majores.*" Sir William Blackstone does not profess to enumerate all the causes of challenge under this head; he only mentions some of them, by way of example and illustration; and they are very sufficient to show, that the juror ought not to stand in any relation to the party, arising either from contract or otherwise, that would carry with it *prima facie* evident marks of suspicion of favour, such as *steward*, which is one of the relations mentioned. But can it be doubted that the relation of tenant is not still much more intimate, and likely to produce a disposition upon his part to favour his landlord, than that of steward, or some of the other relations mentioned. Every man feels that it would be expecting too much of a tenant, that he should be perfectly indifferent to the interest of his landlord, which he may readily conceive is in some degree connected with his own; and that he would be capable, notwithstanding, of judging impartially between his landlord and another person. We therefore think that this exception cannot be sustained, and the court were right in setting the juror aside.

The second error is also an exception to the opinion of the court in admitting the deposition of John Forster, in evidence, on behalf of the defendant. There was no objection to the manner and form of taking it, nor to its being read, on account of the absence of the witness himself, nor to the want of any requisite diligence to procure his attendance; the only objections raised were, first, as to his competency, generally, on the ground of his being liable also to pay to the bank, the plaintiffs, as indorser of the note, the amount

thereof, to enforce the payment of which this action was brought against the defendant as the maker, and not as to his competency to prove the facts testified to by him in his deposition. The only plea put in was payment, and the issue tried between the parties . was upon that plea; the giving of the note to General Forster, the witness, therefore, was admitted, and the endorsement of it over to the bank was not denied. The first question, then, is, was General Forster interested in establishing the payment of the note? And again, if he was, could the verdict and judgment here be given in evidence on the trial of the action pending against him by the bank, as the endorser of the note? That he was interested in making it appear that the note was paid, can admit of no doubt; for if the bank were paid the amount of the note, it at once determined all right on their part to maintain a suit either against the defendant, as the maker, or himself as the endorser thereof. It cannot be pretended that they could have a right to demand payment twice, or to receive a double satisfaction upon it. It is clear, then, that General Forster was deeply interested in the *question* of payment. But a mere interest in the question, involved in the issue, is not sufficient to exclude him as a witness, or his evidence in favour of the affirmative side thereof, unless he should have it in his power thereafter to make it available or beneficial to himself in the suit brought against him. The general rule in England seems to be, that it is no objection to the competency of a witness, that he is also a party to the same bill or note, unless he be *directly* interested in the event of the suit, and be called in support of such interest, or unless the verdict, to obtain which his evidence is offered, would be admissible evidence in his favour in another suit. If the verdict will not *necessarily* affect his own interest, he is a competent witness; and though his testimony, by defeating the *present* action on the bill or note, will probably deter the holder from proceeding in another action against the witness, yet that only affords matter of observation to the jury, as to the *credit* to be given to his testimony. Bent *v.* Baker, 3 *Term Rep.* 36; Jordaine *v.* Lashbrooke, 7 *Ibid.* 601; Smith *v.* Roger, *Ibid.* 62; Jones *v.* Brooks, 4 *Taunt.* 464; *Bayl.* 241; 2 *Stark. Ev.* 179. In conformity to this rule, a prior endorser of a note has been held to be a competent witness for the maker to prove that it was paid. Charnington *v.* Miller, *Peake's Rep.* 6; Humphrys *v.* Moxon, *Ibid.* 52; *Bayl.* 242; *Stark. Ev.* 180, though Adams *v.* Lingard, *Peake's Rep.* 117, would seem to be *contra.* Then would General Forster have a right to give the verdict and judgment in this case, to procure which his testimony was received in evidence on the trial of the suit pending against him? It is obvious, that if he could not be permitted to use the verdict and judgment given here on the trial of the action against himself, he cannot, in a legal point of view, be said to derive any benefit therefrom. The rule, in regard to giving verdicts between private parties in evidence, requires that the *parties* thereto should

be the *same* as in the proceeding, or action in which the verdict is offered as evidence, and that the *fact* found by it should also be the *same.* This rule seems to be founded partly upon a principle of natural justice, that no man shall be bound by the act or admission of another to which he was a stranger, and consequently ought not to be bound, as to a matter of private right, by a judgment or verdict to which he was not a party, where he could make no defence, from which he could not appeal, and which may have resulted from the negligence of another, or may even have been obtained by means of fraud and collusion. So in justice, neither ought any one to be bound by a verdict, although he was privy to it, but when his adversary was not also a party, and consequently where the verdict may have been founded upon the evidence of that adversary himself, who had an interest in obtaining a verdict for the purposes of evidence; for as he cannot give direct evidence upon the subject, he ought not to make use of his own evidence by circuitous means. And besides, it is said, that a verdict on a matter of private right in such case, ought not to be received as evidence, because the person who could have received no prejudice from it, had it been given the contrary way, ought not to derive any benefit from it when it turns out to be in his favour; and because a judgment operates by way of estoppel, and estoppel must be founded on mutuality. Duchess of Kingston's case, 11 *St. Tri.* 261; *Gilb. L. Ev.* 31; 4 *M. & S.* 479; 1 *Stark. Ev.* 213, 214, 220. It being clear that General Forster was not *directly* interested in the event of this action, because whatever it might be, he could neither be released from, nor subjected to any liability whatever by it. In short, because he could neither gain nor lose thereby, then from the principles mentioned above, which seem to be incontrovertibly established, it is equally clear that he cannot give in evidence, on the trial of his own suit, the verdict which has been given here; consequently he would have been competent to prove a direct payment of the note, according to the English authorities, and perhaps here, too, if made after the note fell due. But, from the tenor of his deposition, that does not appear to have been the object for which his testimony was given or received. If it had any relevancy to the issue at all, it was to show that the debt, for which the note in suit was given, had been paid, or at least in equity and fair dealing ought to be so considered, by an appropriation of the proceeds of the Shorb and Lyon notes, according to the agreement, which he testifies was made with the bank when, or before, they were discounted. This was, in effect, to prove that the note was given for a debt previously paid, or in other words, without consideration, and therefore ought not to be paid again. And although want of consideration might have been shown under the plea of payment, as between the original parties, or against an endorser who had given no consideration for the note, yet the question arising here is, was General Forster a competent witness to prove it? Not-

[Harrisburg Bank v. Forster.]

withstanding General Forster may have been a competent witness to prove a direct payment of the note, or a discharge of it, growing out of facts which took place subsequently to the execution of it, yet according to the decision of this court in Stille *v.* Lynch, 2 *Dall. Rep.* 194, he could not be permitted to give evidence tending to show it was given without consideration.　It was there held that the payee and endorser of a promissory note, who had afterwards obtained his certificate as a bankrupt, could not be received as a witness to prove that the note had been given without any consideration, in an action between the endorser and the drawer.　That case is in all respects like the present, and cannot be distinguished from it.　Stille *v.* Lynch would seem to have been decided upon the principle of Walton *v.* Shelly, 1 *Term Rep.* 300, which certainly has prevailed, and been recognized here ever since, so far as regards *negotiable instruments,* which have been *actually negotiated in the usual course of business,* and has been confined strictly to them.　Pleasants *v.* Pemberton, 2 *Dall.* 196; 1 *Yeates* 202; Baring *v.* Shippen, 2 *Binn.* 165, 168; M'Ferren, 1 *Serg. & Rawle* 102; Blagg *v.* Phœnix Ins. Co., 3 *Wash. C. C. R.* 5; Baird *v.* Cochran, 4 *Serg. & Rawle* 399; Hepburn *v.* Cassel, 6 *Serg. & Rawle* 113; Bank of Montgomery *v.* Walker, 9 *Serg. & Rawle* 236; Griffith *v.* Reford, 1 *Rawle* 196; Gest *v.* Espy, 2 *Watts* 268, 265; Bank of Pennsylvania *v.* M'Calmont, 4 *Rawle* 311.

The court below therefore erred in admitting the testimony of General Forster to be read to the jury.

The third error is an exception to the opinion of the court in admitting the check of the defendant, upon the plaintiffs, for the amount of the note in suit, to be read in evidence.　If the defendant had had the amount of the check at the time, the 11th of December 1834, deposited with the plaintiffs in their bank, he would unquestionably have had a right to draw such check, appropriating his money on deposit with the plaintiffs to the payment of his note, which they then held.　If, however, he had no money on deposit with them at that time, he could have no claim to check for any; and without having given some evidence, at least, previously, going to show that he had money to the amount of the check, passed to his credit in the bank, he would not have been entitled to give it in evidence; but having, previously to offering the check in evidence, shown by the testimony of Mr Wier, a clerk or teller in the bank, that six thousand dollars had been passed to his credit on the 13th of December 1833, and it not appearing but what that sum still stood there to his credit, without having been drawn out or appropriated in any way by him, until after the check was offered and admitted in evidence, we cannot say that the court erred in permitting it to be read to the jury.

The fourth error is also an exception to the opinion of the court; in overruling a question put by the plaintiffs to Mr. Wier, a witness called by the defendant, in their cross-examination of him,

VIII.—2 B

[Harrisburg Bank v. Forster.]

after he had been examined by the defendant, in chief. Mr Wier, by his testimony in chief for the defendant, had proved, as already mentioned, that on the 13th of December 1833, six thousand dollars had been placed to the credit of the defendant in the bank, upon the check of General John Forster, drawn in his favour, for the proceeds of the Lyon & Shorb notes, which had been discounted by the bank, conditionally, as they alleged. The question proposed by the plaintiffs in their cross-examination of him, was to ask, what disposition had been made of the money thus placed in the bank to the credit of the defendant, which he claimed as subject to his order. This was objected to by the defendant's counsel, as not being proper in the course of a cross-examination, and thereupon the court overruled the question. It will be observed that in connection with the testimony given by the witness in chief, for the defendant, the latter had just offered and read in evidence, his check for the amount of the note in question, and the protest made by the notary for the non-acceptance of it by the bank. Now, if the witness knew that all the money spoken of as having been passed to the credit of the defendant in bank, had been appropriated by him, or with his consent, had been applied to the discharge of other debts owing by him to the bank; the witness, of course, in answer to the question proposed to be asked by the plaintiffs, would have said so, and thus have shown that the drawing and presenting of the check by the defendant, amounted to nothing, that it was of no more effect than a piece of blank paper. In short, it was only leading to what they might have required, by their cross-examination, the same witness to have stated, *if he knew it,* the precise state of the defendant's account in bank at the time the check was drawn by him and presented; and had he proved that defendant had no money in the bank, or balance coming from it to him at that time, before the check was offered in evidence, I do not see clearly upon what ground he could ever have claimed to be permitted to have read it to the jury, and certainly much less how it could have availed him any thing. That was the point of time at which he was bound, in order to make his check available, to show that he had funds there sufficient to meet it; and showing that he had funds in the bank a year before that, raised only a presumption that they were still there; but being a presumption merely, it was competent for the plaintiffs to repel it by their cross-examination of the same witness. The question proposed to the witness, was calculated to do this. The court therefore erred in overruling it.

The fifth and last error is an exception to the charge delivered by the court to the jury. Because the court left it as a question of fact to be decided by them, whether the note was not paid out of the proceeds of the Lyon & Shorb notes, and erred in telling the jury that the question was, " what was the agreement between the parties in relation to the appropriation of the proceeds of Shorb & Lyon's notes. If those proceeds were to be applied to the dis-

charge of the notes on which John Forster was endorser, as John Forster testifies, there would seem to be money enough in bank of those proceeds, to discharge this note; and in that event it may be considered paid.   But if the proceeds of these notes of Shorb & Lyon, were to be applied to the liabilities of John E. Forster to the Harrisburg Bank, in that event, no part of the note in suit is paid.   It would seem, as you find this fact, your verdict should be for plaintiff or defendant."   Now it would seem as if the court below, in the hurry of the trial, mistook the important question of fact raised by the evidence, upon which the whole case would seem to turn, and ought to have been decided by the jury.   That question is this: was the appropriation of the proceeds of Shorb & Lyon's notes, made by the bank, either expressly or impliedly consented to and acquiesced in afterwards by the defendant?   Because if it was, there was not even the slightest colour for objecting to the payment of the notes in question here.   Indeed, the evidence that there was such acquiescence, not only on the part of the defendant, but likewise on the part of General Forster, seems to be so clear and satisfactory, as to render the original agreement in regard to the appropriation of the proceeds of the Shorb & Lyon notes, made before they were discounted, wholly immaterial, and of no importance whether it can be ascertained with certainty or not.   It is abundantly clear, from the evidence, that the bank, from the instant of time that the notes were discounted, and ever afterwards, refused to appropriate the proceeds of the notes otherwise than has been done.   It appears that, immediately after they were discounted, the defendant, when he called at the bank with General Forster's check for the proceeds of them, and wished to make a different appropriation of the proceeds, he was told by the cashier, that the proceeds must first be appropriated to the debts then actually due and payable by him to the bank, amounting to a sum a little over five thousand five hundred dollars; that the notes were discounted upon this condition.   The note then in the bank, which included the debt in the note in suit, had some time to run, and was not, therefore, required to be paid either in part or in whole, by the proceeds.   The defendant refused at first, to accede to the terms upon which he was informed the notes were discounted, and left the bank, taking the check with him.   He also wanted then to take up the notes of Shorb & Lyon, but was informed by the cashier, that he could not get them as the bank had received them from General Forster, and therefore they could only be returned to him or his order.   He returned immediately to the bank, and signified that he must have eight hundred dollars of the proceeds; but the balance that would have remained after paying his debts, which had at that time become payable to the bank, was not quite equal to five hundred dollars; the cashier therefore told him he could not draw for more than that balance.   He said something like that he must have eight hundred dollars, that he could not do well without

it; when the cashier told him that he might check for the eight hundred dollars, if he chose, and he would himself make his account good for the deficiency until he could replace it. The defendant then, without making further objection, deposited the check from General Forster, for the six thousand dollars, that it might be passed to his credit; and according to the proposal of the cashier, drew his check on the bank for the eight hundred dollars, which was paid to him. This, according to the evidence of the cashier, was probably on the 13th of December 1833; and on the 20th of the same month, he wrote a letter to the defendant, inclosing his account as it stood in the bank, showing the appropriation that had been made of the six thousand dollars. No reply was received from the defendant objecting to it; nor was any objection ever made to the appropriation, excepting the first time he came to the bank after the notes were discounted, when he refused to leave General Forster's check, and take credit for it, to be applied as the bank proposed, until the month of December 1834, one year afterwards, when he wanted to pay the note in question, by his check. During this year of interval, instead of objecting to the appropriation, or asking to have any part of the proceeds of the notes of Shorb & Lyon applied to the discharge of the debt now in question, which existed previously thereto, but was then included in a note drawn by the defendant, and endorsed by General Forster to the bank, who was the payee in it for fourteen hundred dollars, which did not become payable until the February following of 1834, they both went on as if they had been perfectly satisfied with the appropriation made of the six thousand dollars by the bank; and on the 17th of February 1834, renewed the note for ninety days. Again, on the 21st of May, they renewed it for another ninety days, at the expiration thereof, the defendant paid seven hundred dollars in reduction, and on the 22d of August 1834, they gave their note for the residue, being seven hundred dollars, payable in ninety days, which is the note here sued for. After all this, it is difficult to imagine how the defendant and his endorser could have evidenced by their conduct more strongly their assent to, and acquiescence in, the appropriation that was made of the proceeds of the notes of Shorb & Lyon. It seems to be more satisfactory and conclusive evidence of the fact, than even that of a single witness would have been, testifying to their having given their *express* assent, without any thing having been done by either of them afterwards, tending to prove that the fact was so. It seems impossible to draw any other conclusion, than that of a most perfect acquiescence on their part, from their acts and conduct, which speak here more significantly, perhaps, than words, without something beside, would have done. Their conduct, as it would appear, is wholly irreconcilable and inconsistent with every thing but acquiescence. If the debt sued for here was to have been paid out of the proceeds of the notes of Shorb & Lyon, as it is now alleged by the defendant, why was the note containing it renewed by him after-

[Harrisburg Bank v. Forster.]

wards, from time to time, for the space of a year, without asking anything of the kind to be done, unless it were, that by the appropriation made of the money, he considered that there was no part of that fund remaining unappropriated in bank wherewith it could be paid. Why did he previously accept of the cashier's three hundred dollars, if he did not intend to acquiesce in the appropriation then proposed by the bank, to be made of the six thousand dollars? Because it is plain that this was the condition upon which the cashier offered to accommodate him, after telling him in effect, that he could derive no benefit whatever from the bank's discounting the notes, excepting by the appropriation of the proceeds thereof first to the payment of his liabilities in the bank, which were then named to him, and an estimate thereof made of the amount. It would be dangerous in the extreme, after such a lapse of time, and series of acts, as the evidence exhibits to have taken place and been done here by the defendant and his endorser, all tending to show their acquiescence in the appropriation of the money to permit the whole that has been done upon the faith of an acquiescence so induced to be unravelled and set aside. We therefore think there was error in the instruction of the court below to this court, in this respect.

Judgment reversed, and a *venire de novo* awarded.