### ROYAL THAYER vs. WILLIAM CROSSMAN.

In an action by the indorsee against the maker of a promissory note which was indorsed after it was due and dishonored, the indorser is a competent witness to prove that the note was paid before it was indorsed.

ASSUMPSIT by the indorsee of a promissory note dated November 30th, 1832, given by the defendant to Reuben Waters, Jr. payable to him, or order, on demand.

At the trial, in the court of common pleas, before *Warren*, J. the plaintiff proved that Waters indorsed the note to him, on the 27th of June, 1834. The defendant then offered to prove, by the testimony of Waters, that the defendant paid the note to him before he transferred it to the plaintiff. The judge rejected the testimony, and a verdict was returned for the plaintiff. Whereupon the defendant filed exceptions.

*Thomas*, for the defendant. The doctrine, that an indorser of a note shall not be permitted to disparage it, has been overruled. *Birt* v. *Kershaw*, 2 East, 458. *Jordaine* v. *Lashbrooke*, 7 T. R. 601. *Stafford* v. *Rice*, 5 Cow. 23. *Williams* v. *Walbridge*, 3 Wend. 415. *Townsend* v. *Bush*, 1 Connect. 260. *Baird* v. *Cochran*, 4 S. & R. 397.

If the decision in *Churchill* v. *Suter*, 4 Mass. 156, which will be relied on by the plaintiff, is not to be overruled, yet it will not be extended. The rule adopted in that case applies only to usurious and gaming notes, &c., which are void in their inception ; and the other cases in this court, in which the rule has been applied, are, with one exception, cases of usury. *Parker* v. *Lovejoy*, 3 Mass. 565. *Jones* v. *Coolidge*, 7 Mass. 199. *Hartford Bank* v. *Barry*, 17 Mass. 94. *Packard* v. *Richardson*, 17 Mass. 122. *Widgery* v. *Monroe*, 6 Mass. 449. The case of *Butler* v. *Damon*, 15 Mass. 223, was not one of usury ; but the incompetency of the witness was not the true ground of decision in that case. The defence, which was offered, could not have been legally made by any proof. So of *Knights* v. *Putnam*, 3 Pick. 184.

As to matters of defence, which arise after the execution of

a note, a party thereto is a competent witness.  *Warren* v
*Merry*, 3 Mass. 27.    *Parker* v. *Hanson*, 7 Mass. 470.    [*Bry
ant* v. *Ritterbush*, 2 N. Hamp. 212.    *Adams* v. *Carver*, 6
Greenl. 390.    *Nichols* v. *Artman*, Harper, 285.]

The reason cf the rule adopted in *Churchill* v. *Suter*, viz.,
that it would tend to repress the circulation of negotiable
paper, if a party thereto might be permitted by his testimony to
destroy it, is not applicable to the case at bar, in which the note
was indorsed long after it was due.    *Spring* v. *Lovett*, 11 Pick.
419.    *Furman* v. *Haskin*, 2 Caines, 372.    *Ayer* v. *Hutchins*,
4 Mass. 370.

*C. Allen*, for the plaintiff.    The doctrine in *Churchill* v.
*Suter* has never been denied by this court.    Nor has it been
confined to cases where the note was originally void.    *Butler*
v. *Damon*, 15 Mass. 223.    *Knights* v. *Putnam*, 3 Pick. 184.

SHAW, C. J.    This case comes before the court by excep-
tions from the court of common pleas.    The action is on a
promissory note, by an indorsee against the promisor, the note
being dated November, 1832, payable on demand to the prom-
isee or his order, and indorsed to the plaintiff.    The defendant
offered the indorser as a witness, to prove payment of the note
before the indorsement ; but the presiding judge at the trial re-
jected this testimony.    The ground of this rejection was, as we
understand by the argument, the rule laid down in *Churchill* v.
*Suter*, 4 Mass. 156, that an indorser shall not be permitted by
his testimony to invalidate a security, which he has put in cir-
culation, and given credit to by his indorsement.

We do not think it necessary now to consider at large the
authority of the rule in question, as a rule of law in this State.
It was first formally laid down, in the time of Lord *Mansfield*,
in the case of *Walton* v. *Shelley*, 1 T. R. 296.    It was after-
wards overruled in the same court, the court of K:· e's Bench,
in the time of Lord *Kenyon*, by three judges against one ; Mr.
Justice *Ashhurst*, who had concurred in the former opinion, dis-
senting.    *Jordaine* v. *Lashbrooke*, 7 T. R. 601.    Both these
cases were before the court, when the rule was sanctioned in this
Commonwealth.    *Warren* v. *Merry*, 3 Mass. 27.    *Churchill*

v. *Suter*, 4 Mass. 156. It continued to be acted on, as a set-
tled rule here, and was again considered and confirmed, in the
case of *Packard* v. *Richardson*, 17 Mass. 122. It was adopt-
ed in 1802, by a majority of three to two, in the supreme court
of New York; *Radcliff* and *Kent*, Js. dissenting. *Winton* v.
*Saidler*, 3 Johns. Cas. 185. But it was afterwards overruled,
and has ceased to be regarded as a rule of law in that State.
*Stafford* v. *Rice*, 5 Cow. 23. *Williams* v. *Walbridge*, 3
Wend. 415. In Connecticut, the rule has been rejected by
a formal decision in 1818. *Townsend* v. *Bush*, 1 Connect.
260.*

But supposing the rule settled for this Commonwealth, by a
course of decisions too direct and uniform to be now drawn in
question, still it becomes necessary to examine the rule itself, to
ascertain its extent, limits, and qualifications, in order to deter-
mine whether the present case is within it. The general rule
is, that any person, not infamous, or interested in the event of
the cause, may be a witness ; and it is manifest that the rule in
question, which excludes a witness on the grounds of public
policy, is an exception to the general rule ; and an exception
ought not to be extended beyond the limits, to which those rea-
sons of policy fairly carry it.

In *Walton* v. *Shelley*, the rule laid down, as the rule found-
ed on public policy, was, that no party who has signed a paper

---

* It has also been rejected in Vermont, *Nichols* v. *Holgate*, 2 Aik. 140
(but see 2 Verm. 197–199;) in New Jersey, *Freeman* v. *Brittin*, 2 Harrison
192; in Maryland, *Ringgold* v. *Tyson*, 3 Har. & Johns. 172; *Hunt* v. *Ed-
wards*, 4 Har. & Johns. 283; in Virginia, *Taylor* v. *Beck*, 3 Rand. 316; in
Kentucky, *Gorham* v. *Carrol*, 3 Litt. 221 ; in North Carolina, *Guy* v. *Hall*, 3
Murph. 151 ; in South Carolina, *Knight* v *Packard*, 3 McCord, 71 ; in Georgia,
*Slack* v. *Moss*, Dudley, 161 ; in Alabama, *Todd* v. *Stafford*, 1 Stew. 199 ; *Grif-
fing* v. *Harris*, 9 Porter, 226 ; and in Tennessee. *Stump* v. *Napier*, 2 Yerg
35.

But the rule has been adopted in Maine, *Deering* v *Sawtel*, 4 Greenl 191 ;
*Chandler* v. *Morton*, 5 Greenl 374 ; in New Hampshire, *Houghton* v. *Page*, 1
N. Hamp. 60; in Pennsylvania, *Griffith* v. *Reford*, 1 Rawle, 196 ; *Harrisburg
Bank* v. *Forster*, 8 Watts, 309 ; and by the Supreme Court of the United States.
*Bank of the United States* v. *Dunn*, 6 Pet. 51. *Bank of the Metropolis* v. *Jones*
8 Pet. 12.

or deed, shall ever be permitted to give testimony to invalidate the instrument. Very shortly after, in the case of *Bent* v. *Baker*, 3 T. R. 27, some of the judges, in alluding to *Walton* v. *Shelley*, take care to confine the rule to the case of negotiable instruments, upon the ground, that a man shall not by putting in circulation a negotiable instrument, which any man may take and make himself a holder of, and which passes solely upon the credit of the names of the parties appearing upon it, hold out false colors to the public. And almost the entire argument of Mr. Justice *Ashhurst*, in *Jordaine* v. *Lashbrooke*, in support of the rule of *Walton* v. *Shelley*, was founded upon the policy of giving security to negotiable instruments, put into circulation in the course of business.

In *Warren* v. *Merry*, 3 Mass. 27, the rule and the reasoning are confined to the case of negotiable securities, and this rule is expressly so limited by a decision in *Loker* v. *Haynes*, 11 Mass. 498. In *Churchill* v. *Suter*, 4 Mass. 156, after considering the authorities, and considering them as leaving the point unsettled, the court proceed to consider the case on principle. They confine the rule to the case of negotiable securities ; and the whole course of the reasoning further limits this rule to securities negotiated in the course of business, and which are not dishonored. The court recognize the general rule, that in order to give security to the circulation of negotiable paper, in an action between indorser and promisor, the consideration cannot be inquired into. An exception to this rule arises from the statutes of usury and gaming, which declare securities, given on a gaming or usurious consideration, absolutely void ; and such defence therefore may be taken advantage of by a promisor, in a suit by an indorsee. And therefore the rule of policy is mainly confined to the case of a defence on the ground of a gaming or usurious consideration, which by force of the statutes in question affects these securities with a secret taint, which cannot be known to an indorsee.

In the case of *Fox* v. *Whitney*, 16 Mass. 118, the rule is still further limited and explained, by the considerations of public policy on which it was founded. The general rule is recog

nized, but it is held to apply only to a case where a man indorses a negotiable security, and by that act gives a currency and credit to it ; and it was held that it did not apply to a case between original parties, each of whom was conusant of all the facts. The suit, in that case, being by the representative of the promisee against the representative of the promisor ; a party to the note, as co-promisor, was held to be a competent witness, to prove the note given on a usurious consideration, and, as the law then stood, void.

In the case of *Barker* v. *Prentiss*, 6 Mass. 430, Taber, one of the indorsers, was admitted to prove that the indorsement was intended to be limited, and that the indorsee knew it. The reasoning of the court obviously confines the rule in *Churchill* v. *Suter*, so as to prohibit a party to a usurious or gaming negotiable security, which is void in the hands of an innocent purchaser, from impeaching it, in the hands of such purchaser. And they held that a party to such security may be a witness to prove subsequent facts, which admit the legality of the instrument in its original form. The authority of this case, on other points, has been often called in question ; but I am aware of no case, in which the point now stated, has been doubted.

Taking this case as thus stated, it would seem that a party is restrained from testifying only as to facts which render the security void in its creation, and that consistently with the rule, an indorser, if not interested, might be called to prove payment before he indorsed the note, being a fact subsequent to its creation and not rendering it originally void. This is opposed, apparently, to what is implied at least, if not decided, in *Warren* v. *Merry*, 3 Mass. 27. That was an action by an indorsee against the indorser, and the maker was held admissible to prove that he paid the plaintiff after the indorsement, and before the note was payable. But the remarks of the court seem to imply that a payee would not be admitted to prove payment to himself before his indorsement. It may, however, be remarked, that if a note is paid before it is due, and is afterwards indorsed, before it is due, to one who has no notice of the payment, such payment is no defence to a suit by the indorsee against the promisor.

A similar principle seems to have been adopted in *Parker* v. *Hanson*, 7 Mass. 470, where an indorser was called to prove that a note had been fraudulently altered in the date. The court say he is not within the rule ; the note not being objected to as originally void, but as having been fraudulently altered.

Perhaps the case of *Knights* v. *Putnam*, 3 Pick. 184, may be considered as countenancing the rule, that a note indorsed in the ordinary course of business cannot be impeached, by the testimony of the indorser, for any cause existing at the time of the indorsement. This question will therefore deserve consideration, when it shall expressly arise for adjudication.

In a review of the cases, that of *Butler* v. *Damon*, 15 Mass. 223, deserves consideration. It implies that the principle of *Churchill* v. *Suter* would so apply, as to exclude a party who had indorsed a note after it was due, as well as one who had indorsed it before it was due, from showing facts antecedent to the transfer, to defeat a holder of his recovery. The opinion does not state this ; but it may be implied from the fact, which appears by a comparison of the dates, that in that case the note was overdue, when indorsed. But it is manifest from the very brief report of that case, that the attention of the court was not drawn to that distinction ; nor does the remark of the judge, who gave the opinion, refer to it. But what is a more material observation upon that case as an authority is this ; that the indorser had not been offered as a witness, but the defendant had been allowed to give in evidence, not the testimony, but the declarations of the indorser, made, after the indorsement, to the plaintiff. This was obviously inadmissible. It could not be received as an admission, because made after his interest had ceased, and he could not confess away a title he had given by his indorsement ; nor as proof of any fact, because it was hearsay. The point, whether the indorser could have been received as a witness, having indorsed the note after it was due and dishonored, was not before the court, and the cause was decided on other grounds. As an authority, therefore, that case has but a slight bearing upon the present.

From this view of the authorities, and assuming that the rule,

VOL. I. 36

as laid down in *Churchill* v. *Suter*, is the true rule of law in this Commonwealth, we think it will appear to be confined to negotiable bills and notes, actually indorsed and put into circulation by the witness, with a view to give them currency as negotiable securities. The object, which the law has in view, is to give a secure currency and circulation to negotiable securit'es, taken in the ordinary course of business by an innocent indorsee, without notice of its dishonor. But it is no object of the law, or of public policy, to give currency to dishonored bills ; and a note overdue carries notice of its own dishonor on its face. An indorsee of such a note is presumed by law to have notice of every defect which may exist, either in the original creation of the note or subsequently ; he takes it, therefore, not upon the credit of the names it bears, but solely upon the faith he may have in the indorser. He takes, in legal contemplation, a legal title, indeed ; that is, a right to sue in his own name ; but he takes a right to recover only as the indorser himself could recover, and of course he takes with full constructive notice of all grounds, legal and equitable, which the defendant might have, if the suit were brought by the promisee, and subject to all the same species of defence. As between the original parties, and to a note not negotiated and put in circulation, we have seen the rule does not apply. *Fox* v. *Whitney*, 16 Mass. 118. By the rules of law, an indorsee, taking a note overdue, takes it subject to every defence ; and that case, therefore, is an authority for the admission of an indorser, when the plaintiff can claim only the same rights as if the suit were between the original parties. The authorities are so numerous and explicit, that the indorsee of a dishonored note takes it subject to all defences, that it is unnecessary to cite them. *Sargent* v. *Southgate*, 5 Pick. 312.

In applying these rules to the present case, the court are of opinion that the case was not within the principle of *Churchill* v. *Suter*, because the note was overdue and dishonored, when it was indorsed to the plaintiff.

In the first place, it appears that this was a note payable on demand, and the evidence is, that it was indorsed nearly two years after its date. What is the shortest time, within which a

note on demand will be deemed a dishonored note, has not been explicitly settled. But we have no hesitation in considering such a note as overdue and dishonored in a much shorter time than two years.

In *Spring* v. *Lovett*, 11 Pick. 417, it was considered that an indorser would be a competent witness to prove that the note was indorsed after it was due. But there is no necessity of relying on this point, in the present case, because it appears by other evidence, independent of the testimony of the indorser. Before coming to the question, therefore, whether the indorser in this case was a competent witness, it is proved by unobjectionable evidence, that the plaintiff took the note by indorsement, as a dishonored note. In Pennsylvania, where, it is believed, the rule of *Walton* v. *Shelley* is still in force as a rule of evidence, it is held that it only applies to a negotiable security, indorsed and put into circulation in the usual course of business, and that it does not apply to a note overdue, or otherwise dishonored. *Baird* v. *Cochran*, 4 S. & P. 397. This appears to us to be a just limitation and modification of the rule relied upon, and supported as well by authorities, as upon the reasons and principles of public policy, on which the rule itself is founded. The court are therefore of opinion, that Waters, the indorser, ought to have been admitted as a witness, to prove payment of the note before its indorsement ; and because he was not so admitted, the exceptions must be sustained, and a new trial had.

*New trial to be had at the bar of the court of common pleas.*