JACKSON *against* PACKER and others.

In an action by the indorsee of a bill of exchange, payable " at either bank in *Providence,*" against the acceptor, it was held, that notice to the defendant of the bank at which demand of payment would be made, was not essential to the plaintiff's right of action.

In a suit brought by the indorsee of a bill against the acceptor, the drawer is a competent witness, unless there are circumstances in the case shewing a greater interest in favour of one party than the other.

Where a bill was drawn by *A* and accepted by *B,* for the accommodation of *B,* and was then placed in the hands of *A,* that he, as the agent of *B,* might get it discounted and pay over the avails to *B ;* in the prosecution of this

object, *A* delivered the bill, with some other paper, to *C*, who indorsed such paper, got it discounted and paid a part of the avails to *A ;* the bill not being paid at maturity, *C* brought a suit on it against *B*, as acceptor; and *B*, in support of his defence, offered *A* as witness; it was held, that there was nothing in the circumstances of the case making *A* liable for the costs of such suit, if *B* should be subjected; and consequently, *A*, having no greater interest in favour of one party than the other, was a competent witness.

It being found, in such case, that the money paid by *C* to *A* had been reimbursed to *C* from the paper put into his hands by *A ;* it was held, that nothing being due from *B* either to *C* or *A*, *C* was not entitled to recover.

A new trial will not be granted for a verdict against evidence, where there is conflicting testimony, unless there is a strong preponderance in favour of the party seeking such new trial.

*Windham,*
July, 1839.

Jackson
*v.*
Packer.

THIS was an action of *assumpsit*, brought by the plaintiff, as indorsee of a bill of exchange, drawn by *Samuel Dexter*, as agent of the *Bowen Bleaching and Calendering Company*, upon the defendants, and by them accepted, for 1000 dollars, dated *June* 24th, 1837, payable four months after date, to the drawer's order, at either bank in *Providence*.

The cause was tried at *Brooklyn, January* term, 1839, before *Waite*, J.

The plaintiff read in evidence the bill of exchange described in the declaration. The hand-writing of the several parties to the bill and the copartnership of the defendants, were admitted. The plaintiff proved, that on the 27th of *October*, 1837, when the bill became payable, he presented it at the *Blackstone Canal Bank*, one of the banks in *Providence*, and demanded payment thereof, which the defendants neglected to make ; and that the bill was thereupon protested for non-payment, and the requisite notice was given.

The defendants claimed, that the bill was indorsed to the plaintiff, and is now holden by him, under the following circumstances. It was drawn, and accepted by the defendants, for the purpose of enabling the drawer, as their agent, to procure it to be discounted for their use and benefit, and to pay over to them the avails. On the 26th of *June*, 1837, the drawer made an arrangement with the plaintiff, by which he was to indorse and deliver to the plaintiff the bill in suit ; also another bill, drawn by *Samuel Dexter* upon and accepted by *S. Newton Dexter*, dated *June* 17th, 1837, for 1000 dollars, payable four months after date, at the *Fulton Bank* in *New-York ;* and a promissory note, made by *Cornelius B. Fenner*,

for 400 dollars, dated *June* 21st, 1837, payable to *Samuel Dexter's* order, four months after date. These the plaintiff was to get discounted at the *Canal Bank*, and for his trouble was to have the loan of a part of the money, for a considerable period of time. In pursuance of this arrangement, said bills and note were indorsed by *Samuel Dexter*, and delivered to the plaintiff, who procured them to be discounted at the bank, received the avails, and paid therefrom to *Dexter* 975 dollars only. *Dexter* afterwards called upon the plaintiff for the balance, which he declined paying, upon the ground that he had indorsed the paper and was not satisfied with his security. It was thereupon agreed between them, that the plaintiff should take up the paper from the bank, and return it to *Dexter*, upon the re-payment of the money advanced, and in the mean time, should hold the paper as collateral security for that sum. Accordingly, the plaintiff, on the 13th of *July*, 1837, redeemed this paper from the bank, by substituting other paper in its place ; and has never since held the former otherwise than as security for the 975 dollars. When the *Fenner* note came to maturity, it was paid to the plaintiff, by the maker. The plaintiff afterwards commenced a suit against *S. Newton Dexter* upon his acceptance, who, on the 1st of *November* 1838, settled the suit, and paid the plaintiff the amount of the bill and the costs, by giving the plaintiff a note signed by himself and indorsed by *William Eells* for 1100 dollars, payable in six months from the 1st of *November* 1838, and paying the balance in money. And the defendants have never received any thing upon the bill in suit accepted by them.

In support of this claim of the defendants, they offered in evidence the deposition of *Samuel Dexter* ; to the admission of which the plaintiff objected, on the ground that he was the drawer of the bill in suit, and would be liable to the defendants, in case a recovery should be had against them, for the amount of the bill and the costs of this suit. The court decided that the testimony was admissible.

The deposition, with the rest of the evidence, was then, by consent of the parties, admitted, subject to such objections as they were obnoxious to, to be disposed of, by the court, in the charge to the jury.

*Samuel Dexter* testified as follows : " In the month of *June*

1837, *Daniel Packer* jr. handed me an acceptance of *Daniel Packer & Sons* for 1000 dollars, payable in four months from date.    The draft was drawn by me, as agent of the *Bowen Bleaching and Calendering Company*, for the purpose of getting it discounted, for the benefit of said *Daniel Packer & Sons,* and the nett proceeds were to be paid over to them. That acceptance and three other acceptances of 1000 dollars each, and a note of *C. B. Fenner's* for 400 dollars, were delivered to Mr. *George W. Jackson*, upon his offer to get them discounted at the *Canal Bank;* the consideration of which offer was, that I should lend him a part of the money, for a considerable length of time.    Mr. *Jackson* carried said paper to the *Canal Bank* board, and got 2400 dollars of it discounted, in which 2400 dollars was included the Messrs. *Packers'* said acceptance.    When Mr. *Jackson* told me what he had done, I told him, that I did not know that I should be able to accommodate him with the loan of the money so long as he might wish, because much of the paper that he had got discounted I should want to use very soon, and only that portion of the paper offered that had the shortest time to run, was discounted.    From the amount of said discounts Mr. *Jackson* paid me between 900 and 1000 dollars, (I do not recollect the precise sum,) which is all I received.    Upon my insisting upon receiving the residue, after a considerable time, Mr. *Jackson* objected to paying it, upon the ground that he had indorsed the paper, and did not know enough about the parties to be satisfied with the security ; and if I insisted upon having the residue of the money, he would get the paper back again, and deliver it to me, upon my paying him the money he had advanced.    I told him, that I wanted either the money or the paper.    Accordingly, he went to the bank, and, as he told me, substituted other paper for it, and directed the cashier to deliver the paper up to me, upon my paying said 900 and odd dollars.    This money I have never paid, from that day to this ; but I called at the bank, in the month of *October* following, in company with *Daniel Packer* jr., who was prepared to pay between 500 and 600 dollars of said 900 and odd dollars, provided he could take up his paper with that sum ; and it was stated by me to him, that a note of *C. B. Fenner,* for 400 dollars, was paid, which would reduce the amount due.

    " *Daniel Packer* jr. came to see me, to know if I had taken

up said acceptance of *Daniel Packer & Sons.* I told him, I presumed said acceptance was in the *Canal Bank*, and that I had not taken it up. The cashier of the *Canal Bank*, upon our applying to him for the paper, stated, that he had delivered it to said *Jackson.* Then I accompanied Mr. *Packer* in pursuit of Mr. *Jackson.* Mr. *Jackson* was not to be found.

"I further state, that I acted in this matter of *Daniel Packer & Sons'* acceptance, as their friend and agent ; that I had no interest then, and I consider that I have none now, in the result of this suit between Mr. *Jackson* and them ; nor do I consider myself liable or responsible to the *Packers* or Mr. *Jackson*, or any body else, about this matter. There was originally no money consideration between me and the *Packers*, in this transaction. I had no more interest in this paper than the pope of *Rome.*

"During the *Summer* of 1837, between the time when said acceptance was delivered to me and the *October* following, when we called at the bank together, I stated to *D. Packer* jr. what I had done with the paper and how it was situated, and told him, that I would take it up, and pay the 900 and odd dollars, as soon as I possibly could. He said, he should be very glad to have me do it, as soon as was convenient. There was no consideration paid by Mr. *Jackson* for said accepted paper, other than what I have before mentioned, *viz.* the loan of the money."

On cross-examination, this witness said : "I do not remember to whom said draft was payable. I never paid to Messrs. *Packer & Sons* a single mill of the amount I received from Mr. *Jackson ;* they never assented to my loan of said money to Mr. *Jackson :* but my intention was, to loan it out of the paper that belonged to me individually, and to pay them their money, whenever they called for it. I never informed Mr. *Jackson*, that this paper belonged to the *Packers.* I consider the transaction between the *Packers* and myself as confidential, and should consider it very improper in me to expose it."

To prove the manner in which the bill in suit was held by the plaintiff, the defendants also read in evidence two depositions of *Thomas B. Fenner.* In the first, he testified as follows : "I have been, for seven years last past, and now am, the cashier of the *Blackstone Canal Bank* in the city of *Providence.* The draft annexed [the bill in suit] was discounted at said bank for *George W. Jackson*, on the 26th of *June*

1837; and it was paid by said *Jackson*, on the 13th of *July* 1837. At the time of the discount of said draft, a draft on *S. Newton Dexter* for 1000 dollars, and a note signed by *C. B. Fenner* for 400 dollars, were discounted for said *Jackson*, and paid by him at the same time the first named draft was paid. The three pieces of paper above named were all left in the bank, by the said *Jackson*, and ordered to be delivered to *Samuel Dexter*, upon his depositing, to the credit of said *Jackson*, 975 dollars. This order was afterwards rescinded, and the papers above described were left for collection, on account of said *Jackson;* said *Dexter* never having offered to pay said 975 dollars. This rescinding was before said papers came to maturity." In his second deposition, this witness testified : " That the following paper was discounted at the *Canal Bank* in *Providence*, on the 26th of *June*, 1837, for *G. W. Jackson, viz. C. B. Fenner's* note for 400 dollars, payable *October* 24th, 1837; *Daniel Packer & Sons'* acceptance, payable *October* 24th, 1837; and *S. Newton Dexter's* acceptance, payable *October* 20th, 1837. Said paper was paid by said *Jackson*, on the 13th of *July*, 1837, and then lodged, to be delivered to *Samuel Dexter*, provided he should pay to Mr. *Jackson's* credit 975 dollars. Said *Dexter* never paid said amount to said *Jackson's* credit; and the paper was afterwards ordered to be placed on file for collection, on account of said *Jackson*, and the order to deliver said paper to said *Dexter* was rescinded.

" My impression is, that none of the aforesaid paper was ever paid at the *Canal Bank*, but was all subsequently delivered to Mr. *Jackson;* and I am under the impression, that he retained the paper to indemnify him for the amount advanced on the same, and for claims against said *Dexter*. Whether this impression arose from conversation with said *Jackson*, or said *Dexter*, I do not at this time recollect. I conversed with Mr. *Jackson* about this paper, at the time it was delivered to him. I also recollect conversing with said *Dexter*, in relation to said paper. I derived the impression from them, that said paper was held by Mr. *Jackson*, as collateral security for other demands."

To prove the payment of *C. B. Fenner's* note, the defendants introduced his deposition, who testified thus : " On the 21st of *June*, 1836, as appeared by my journal of that day, I

gave a note payable to the order of *Samuel Dexter*, agent of the *Bowen Bleaching and Calendering Company*, for 400 dollars, payable at bank, which I think was the *Exchange Bank*, four months from the date thereof, which note I paid." On cross-examination, he said, that at the time he paid the note, *George W. Jackson's* name was on the back of it.

To prove the payment of *S. Newton Dexter's* acceptance, the defendants introduced the depositions of *S. Newton Dexter, Samuel Marsh* and *Benjamin Cozzens*.

*Dexter* testified, that he was a brother of *Samuel Dexter*, Esq. of *Providence ;* that on or about the 27th of *March*, 1838, the deponent had a suit commenced against himself, by *George W. Jackson*, in the supreme court of the state of *Rhode-Island*, upon an acceptance of a certain draft made by said *Samuel Dexter*, for the sum of 1000 dollars, payable to the drawer's own order, four month's after the date thereof ; that after said suit was commenced, but before it was tried, the deponent proposed by letter to *Thomas W. Tucker*, Esq., the attorney for said *Jackson* in the suit, to settle it and pay said acceptance, by giving his, the deponent's promissory note, with an indorser ; to which proposition said attorney agreed ; that afterwards, on or about the first of *November*, 1838, the deponent made his promissory note for about 1100 dollars, indorsed by *William Eells*, Esq., who is an entirely responsible man, payable six months after date, and caused it to be delivered to said attorney, for said *Jackson*, in pursuance of said agreement, and the balance of the debt, costs, and interest, was paid by the deponent's agent in cash ; that in all the negotiation on this subject, it was understood and agreed, that said note, with the balance of money that was paid, should be received in full payment and discharge of said draft, and that unconditionally ; and there was no agreement or understanding on the part of the deponent, that said draft was to be kept or retained, as collateral security, or for any other purpose whatever ; but when said note was delivered, and the money paid, the deponent was informed, through his agent, by said *Tucker*, or some one who acted for him, that they wished to retain said draft and acceptance, because Mr. *Jackson* had a law-suit with some one ; and the draft was retained, and the deponent was not able to procure it, and has never received it.

*Windham,*
*July,* 1839.

Jackson
*v.*
Packer.

*Marsh* testified, that in *December*, 1838, he acted as agent for *S. Newton Dexter*, in relation to a suit brought against him, upon his acceptance of a draft for 1000 dollars, drawn by *Samuel Dexter*, and has not acted as agent of said *Dexter*, in any other matter; that he delivered to *Thomas W. Tucker*, Esq., of the city of *New-York*, the attorney of *George W. Jackson*, a note made by *S. Newton Dexter*, and indorsed by *William Eells*, Esq., in part payment of said acceptance, and the residue was paid in cash to said attorney; such payment being deemed in full settlement of the suit and charges; and said suit was to be withdrawn and discontinued; that upon said settlement being made, said *Tucker* did not deliver to the deponent said acceptance, and gave as a reason, that his doing so would interfere with suits pending: that at the time of this transaction, said *Tucker* did not express any doubt as to the responsibility of the drawer or indorser of the note given in part payment as aforesaid."

*Cozzens* testified as follows: "A few days since, I called on *George W. Jackson*, in behalf of *S. Newton Dexter*, to propose to said *Jackson* the settlement of a suit he had instituted against said *Dexter*, upon said *S. N. Dexter's* acceptance of *Samuel Dexter's* draft for 1000 dollars. The terms I was requested to, and did propose to Mr. *Jackson*, for a settlement of said suit, were, that *S. N. Dexter* would pay the costs, and give his note for the debt, at six months, with an indorser. Mr. *Jackson* promptly agreed to accept the terms, provided the indorser, on inquiry, proved satisfactory; and he then observed, there would be a balance of two or three hundred dollars due to *Samuel Dexter*, which he would pay to his assignee. Mr. *Jackson* has since informed me, that he had directed said suit to be discontinued, on the above terms. I believe this is all that passed at this time; but from my previous knowledge of the circumstances of the paper, amounting to 2400 dollars, which Mr. *Jackson* received from *Samuel Dexter*, I have no doubt Mr. *Jackson* referred to the whole of this paper, when he stated the above balance.

"Some time last year, Mr. *Jackson* stated to me his case respecting this paper, and asked my opinion upon it; and my impression is, that he then stated the substance of the case, *viz.*, that he claimed to retain *S. Newton Dexter's* and *D. Packer and Son's* acceptances for 1000 dollars each, and

*C. B. Fenner's* note for 400 dollars, not only to reimburse himself for the sum of near 1000 dollars he had advanced to *Samuel Dexter*, but also to pay the amount of a draft for 1000 dollars, drawn or indorsed by said *Samuel*, on, and accepted by *Jesup, Swift & Co.*, of *New York*, which, I understood, was drawn or indorsed by said *Samuel*, for the accommodation of said *Jesup, Swift & Co.*, and was also discounted by Mr. *Jackson* for them.   And to this statement of the case, I have no doubt Mr. *Jackson* referred, when he stated the above balance ; but I am not positive that the above circumstances were fully stated to me, by Mr. *Jackson*, when he asked my opinion as above stated.

"I do not know that *S. Newton Dexter* has yet given the note above proposed in settlement of said suit.   My impression is, but from whence derived, I cannot say, that said *Fenner's* note was not paid, when due, but was subsequently paid to Mr. *Jackson*."

The plaintiff claimed, that the acceptance of *S. Newton Dexter* had never been paid, and that the note given by him, was given merely as collateral security ; and in support of this claim, he read in evidence the depositions of *Samuel Crapo, Thomas W. Tucker*, and *Thomas B. Fenner.*

*Crapo* testified as follows: "I am an attorney at law, practising in the city of *New-York*. Some time since, *George W. Jackson*, of *Providence*, confided to me, for collection, a certain bill of exchange, drawn by *Samuel Dexter* upon *S. Newton Dexter*, and by him accepted, for the sum of 1000 dollars ; on which I commenced a suit against said *S. N. Dexter*.   In the course of the last fall, I was authorized, by said *Jackson*, to discontinue said suit, provided said *S. Newton Dexter* would give, as collateral security for the payment of said bill of exchange, his note for the amount thereof, at six months, indorsed by *William Eells*.   A correspondence thereupon ensued, between said *S. Newton Dexter* and myself, said *Dexter* desiring that the bill of exchange, should be surrendered to him, at the time of giving said note.   I consulted said *Jackson* upon the subject, and he wholly refused to accede to said proposal, and instructed me and his partner to insist upon retaining said bill of exchange, and receiving said note as collateral security.   The matter was finally arranged, by my partner, (in my absence from *New-York*,) upon

the terms so proposed by said *Jackson*.   I recollect seeing, since said settlement, in my files of papers, the protest of said bill of exchange, and I have no doubt that it encloses the bill of exchange ; but having had no occasion to unfold it, I cannot speak positively.   This deposition is given by me, while I am casually in *Providence*, without an opportunity of consulting my books and papers."

*Tucker*, an attorney and counsellor at law in the city of *New-York*, testified as follows : " In the month of *November*, 1837, a suit was commenced by me, in favour of *George W. Jackson*, against *S. Newton Dexter*, upon an acceptance of a draft of said *Dexter* for 1000 dollars, drawn by *Samuel Dexter*, dated *June* 17th, 1837, and papable four months after date, at the *Fulton Bank*, in the city of *New-York*, and indorsed by *Samuel Dexter*.   Subsequently to bringing such suit, it was compromised, by said *S. Newton Dexter's* giving a new note, with another name, for 1100 dollars, and paying expenses.   In making such compromise, said *Jackson* refused to give up the above acceptance, until said new note should be paid ; and it was accordingly agreed by me, as the attorney of said Jackson, and the agent or attorney of said *S. Newton Dexter*, that said acceptance should be retained by me, as the attorney for said *Jackson*, until said new note should be paid, and as security for the payment thereof ; and the same is now in my possession."

*T. B. Fenner*, cashier of the *Blackstone Canal Bank* in *Providence*, testified as follows : " On the 10th of *December*, 1838, there was discounted at said Bank, for *George W. Jackson*, a note dated *Nov.* 1st, 1838, payable in six months, at the *Dry Dock Bank* in the city of *New-York*, for 1100 dollars, signed by *S. Newton Dexter*, and indorsed by *William Eells* and said *Jackson*, which note is now the property of said *Blackstone Canal Bank ;* and in case of non-payment by the maker, said Bank will look to said *Jackson*, and the other parties thereto, for payment thereof."

The plaintiff further claimed, that in addition to the 975 dollars, *Samuel Dexter* was indebted to him in the amount of a certain bill of exchange, drawn by said *Samuel* upon and accepted by *Jesup, Swift & Co.*, of *New-York*, dated *March* 11th, 1837, for the sum of 1000 dollars, payable to the order of said *Samuel*, four months after date, and indorsed by said *Samuel*, and subsequently by the plaintiff ; which bill

*Windham,*
*July, 1839.*

*Jackson*
*v.*
*Packer.*

when it became payable, the plaintiff, by reason of his indorse-ment, was compelled to pay and take up. In support of this claim, the plaintiff read in evidence the deposition of *Henry S. Gladding,* cashier of the *Exchange Bank* in *Providence.*

He testified, that a bill or draft drawn by *Samuel Dexter,* Agent *B. B. & C. Co.,* on *Jesup, Swift & Co.,* for 1000 dollars, payable four months after date, to the order of the drawer, was discounted at said bank, some time between the date and maturity of it, and was sent to the *Merchant's Bank,* in the city of *New-York,* for collection. Said draft was, at its maturity, protested for non-payment, and received by the deponent, on the 16th of *July,* 1837. On the 7th of *August,* following, *G. W. Jackson* gave the deponent a draft, drawn by himself, upon *Jesup, Swift & Co.,* of the same amount as the other, indorsed by *Charles Jackson,* payable on the 14th of *September,* 1837; which draft was discounted at said *Exchange Bank,* and the proceeds applied to pay the other draft. The draft drawn by said *Jackson* was also protested for non-payment, and was subsequently, *viz.,* on the 29th of *December,* 1837, paid, by said *Jackson,* by his note for 600 dollars, indorsed by *Robinson, Brown & Co.,* and by his payment of the balance, and expenses of protest in cash; which note of 600 dollars has since been paid, by said *Jackson.*

The evidence above stated is all the evidence which was introduced by the parties, relating to the several questions made on the trial of the cause.

The plaintiff thereupon claimed, and prayed the court to instruct the jury, that, as the bill mentioned in the plaintiff's declaration, had been negotiated to him without any notice, at that time or afterwards, that there was any want of consideration on the part of the defendants, it was not competent for them to prove the facts set up by them in their defence, or call upon the plaintiff to shew a consideration paid by him for the bill; and notwithstanding the facts stated in their depositions, he was entitled to recover the full amount of the bill: That the payments upon the *Fenner* note, and the *S. Newton Dexter* bill, if any such had been made, could not be applied in satisfaction of the demand in this suit, or any part of it: And that he had a right to apply the proceeds of said two bills and note, in satisfaction of *Samuel Dexter's* indebtedness to him, on account of the bill drawn upon *Jesup, Swift & Co.,*

and to hold said bills and note until that debt was paid. He further claimed, that the payment of the *Fenner* note had not been proved ; and that he had proved that the note given by *S. Newton Dexter* was not received in payment of his accep-tance, but only as collateral security.

The defendants claimed, that the demand of payment upon the bill in suit was not sufficient, because the plaintiff had not given them any previous notice that he should demand pay-ment at the *Blackstone Canal Bank:* That, upon the testi-mony in the cause, the plaintiff was entitled to recover, upon said two bills and note, the sum of 975 dollars, and interest only ; and that, having been paid by *S. Newton Dexter* and *Fenner,* more than that sum, he was not entitled to recover of the defendants : That the plaintiff had no right to apply the proceeds of said two bills and note, or any part thereof, in satisfaction of his claim upon *Samuel Dexter,* on account of the bill drawn upon *Jesup, Swift & Co.,* there being no evi-dence of any agreement to that effect from *Samuel Dexter.*

The court instructed the jury, that the plaintiff was not precluded from a recovery, in consequence of not having given the defendants notice that payment of the bill would be demanded at the *Blackstone Canal Bank:* That if they should find, that the defendants accepted the bill in suit, with-out having received any consideration therefor, and merely to enable the drawer, as their agent, to raise money upon it for their use ; and that the drawer, in the final arrangement with the plaintiff, only pledged it, with the other bill and note, to se-cure the re-payment of the 975 dollars, and nothing more ; the plaintiff was not entitled to recover the full amount of the bill, but only the 975 dollars and interest : That if they should further find, that the note of 400 dollars had been paid to the plaintiff, they ought to deduct that sum from the amount that might otherwise be due the plaintiff: That if they should fur-ther find, that the bill accepted by *S. Newton Dexter* had been paid, by the note which he had afterwards given to the plaintiff ; in that case, the demand of the plaintiff would be satisfied, and he ought not to recover of the defendants : But if they should find, that that bill had not been paid, and that the note was given merely as collateral security for the pay-ment of the bill, then the plaintiff's demand would not be sat-isfied, and they ought to return a verdict in his favour ; the

question, whether the note was received by the plaintiff as *payment,* or only as *collateral security,* being a matter of fact for the jury to determine, upon the evidence before them : That if they should find the facts in the case to be as claimed by the defendants, the plaintiff would not have a right to hold the bill in suit, and collect it for the purpose of applying the proceeds to the payment of his claim arising from the bill drawn upon *Jesup, Swift & Co.,* without any evidence of agreement or understanding to that effect, between *Samuel Dexter* and the plaintiff.

The jury returned a verdict in favour of the defendants ; and the plaintiff, claiming that the verdict was against the evidence in the cause, and that the court erred in the admission of testimony, and in the charge to the jury, moved for a new trial.

*Goddard* and *Backus,* in support of the motion, contended, 1. That *Samuel Dexter,* the drawer and indorser of the bill, was not a competent witness for the defendants, by reason of interest in the event of the suit ; he being liable to them, if the plaintiff recover, for damages *and costs,* whereas, if the defendants prevail, he will not be liable to the plaintiff for the costs. *Barnwell* v. *Mitchell,* 3 *Con. Rep.* 101. In the first place, it appears from his own testimony, that he acted as *agent* for the defendants, in getting this bill discounted for their benefit ; and that he violated his orders, and had it discounted for his own benefit. He is, therefore, liable to indemnify them for the costs and expenses incurred by them in the defence of this suit. 1 *Stark. Ev.* 110, 1. *Larbalestier &* al. v. *Clark,* 1 B. *& Ad.* 899. 1 *Leigh's N. P.* 501. *Jones* v. *Brook,* 4 *Taun.* 465. *Burgess* v. *Cuttill,* 6 *Car. & P.* 282. *Bird* v. *Thompson,* 1 *Esp. Rep.* 399. Secondly, he is not liable for the costs of this suit to the plaintiff, if the defendants prevail. The indorser, by his act of indorsement, makes with the indorsee a definite contract ; and he cannot be made answerable beyond it. This contract is, that if the acceptor do not pay the bill, on demand made at maturity, he will pay it, if duly notified of the acceptor's default. The indorser is a mere *surety* for the acceptor, who is the principal debtor. 3 *Kent* 86. But one who engages as surety for the debt of another, is not liable to the expenses of a fruitless suit against

the principal. 2 *Stark. Ev.* 775. and cases cited *ibid.* 1 *Leigh's N. P.* 487.

2. That the court erred in charging the jury, that the plaintiff was not entitled to recover, if the *Fenner* note, and the *S. Newton Dexter* draft had been paid. If the plaintiff had good cause of action at the time this suit was commenced, he could not be defeated, by a subsequent payment of the notes which he held as collateral security. He is, at least, entitled to recover nominal damages and costs. 1 *Leigh's N. P.* 486. *Toms* v. *Powell,* 7 *East,* 536.

3. That admitting this to be an *accommodation* acceptance, still, it has come into the hands of the plaintiff, under such circumstances, that he is entitled to recover the whole amount. *Hale* v. *Hale,* 8 *Con. Rep.* 340. For, in the first place, it was not *over-due.* It had then nearly four months to run. Secondly, there was not only no *mala fides,* on the part of the plaintiff, in receiving the bill, but there were no suspicious circumstances attending the bill itself. Thirdly, it was taken in the usual course of business. Money was advanced to the drawer, on the credit of the bill. Fourthly, the plaintiff paid a valuable consideration for it ; for he incurred a responsibility, in indorsing this and other paper, and he advanced the sum of 975 dollars on the credit of the bill. *Wookey* v. *Pole & al.* 4 *B. & Ald.* 1. Fifthly, if he merely held it as collateral security for the re-payment of the 975 dollars, that was a sufficient consideration. *Heywood* v. *Watson,* 4 *Bing,* 496. *Percival* v. *Frampton,* 2 *Cr. M. & R.* 180. 1 *Leigh, N. P.* 473. and 477. *in notis.*

4. That this was not an *accommodation* acceptance. *Dexter,* the drawer, testified, that he acted as the agent of the defendants in this transaction ; and that, although he agreed to loan to *Jackson* a part of the proceeds of the paper which he indorsed to him, it was his intention to loan it out of paper belonging to himself individually, and to pay the defendants their money, whenever they should call for it. The plaintiff's claim, then, is, that this 975 dollars was received for the defendants by *Dexter,* their agent, who was authorized to receive it. In contemplation of law, it was paid to them. If the plaintiff has received the proceeds of the other paper, *viz.,* the *Fenner* note, and the *S. Newton Dexter* draft, the defendants have no claim upon it, but the plaintiff may apply it to

*Windham,*
*July, 1839.*

*Jackson*
*v.*
*Packer.*

the payment of the *Jesup, Swift & Co.* acceptance, or account with *Dexter* for it in some other way. 2 *Stark. Ev.* 171. *Wiffen* v. *Roberts*, 1 *Esp. Rep.* 261.

5. That the verdict of the jury is against the weight of the evidence. First, there is no proof of payment of the *Fenner* note, except what is derived from the deposition of *Fenner* himself; and he swears that the note which he paid was dated *June* 21, 1836, whereas the note which the plaintiff received of *Samuel Dexter* was dated *June* 21, 1837. Secondly, with respect to the payment of the *S. Newton Dexter* draft, the plaintiff claims, that the deposition of said *Dexter* is clearly inadmissible as to every point material to this enquiry, being hearsay merely : and that the other depositions of the defendants, *viz.*, those of *Benjamin Cozzens* and *Samuel Marsh*, merely shew, that the new note, indorsed by *William Eells*, and the cash, were received by *Jackson, in settlement of the suit* pending against *S. Newton Dexter*, and not *in payment of the draft;* whereas, the depositions of *Crapo* and *Tucker* are direct to the point, that the new note was received by *Jackson*, not in payment of the draft, but as collateral security.

*Strong* and *F. B. Johnson*, contra, insisted, 1. That *Samuel Dexter* was a competent witness. In the first place, he was not incompetent, by virtue of his relation as drawer and indorser. *Brard* v. *Ackerman*, 5 *Esp. Rep.* 219. *Dickinson* v. *Prentice*, 4 *Esp. Rep.* 32. *Cropley* v. *Corner*, 4 *Car. & Pa.* 21. Secondly, the circumstances of his situation, did not render him incompetent. The bill was drawn and accepted by the defendants, for the purpose of enabling the drawer, *as their agent*, to procure it to be discounted *for their use and benefit*, and to pay over the money that might be obtained upon it. The defendants cannot, therefore, resort to *Dexter*, in any event. Thirdly, if *Dexter* is liable to the plaintiff as drawer or indorser, he has no interest to defeat a recovery against the defendants in this suit. Fourthly, if he has any interest whatever, it is balanced, by an equal interest the other way ; and an equipoise of interest does not disqualify a witness. 2 *Stark. Ev.* 751. *Wright* v. *Nichols*, 1 *Bibb.* 298. *Cushman* v. *Loker*, 2 *Mass. Rep.* 108. *Nessly* v. *Swearingen*, *Addis. Rep.* 144. The mere preponderance of *difficulties*, (if

there be any) is of too uncertain and contingent a nature to afford a practical rule in the case.

2. That if *Dexter* was legally incompetent, still a new trial will not be granted for the admission of his testimony, as there was sufficient evidence without it to authorize the finding of the jury. *Horford* v. *Wilson*, 1 *Taun.* 12. *Nathan* v. *Buckland*, 2 *Moore* 153.

3. That this bill being payable " at either bank in *Providence*," where there are many banks, the holder was bound to give notice to the acceptors at which bank the bill was to be found, and until such notice was given, the acceptors were in no default, and were not liable to be sued. The election of the holder was a matter exclusively within his knowledge. *The North Bank* v. *Abbot*, 13 *Pick.* 465. 469.

4. That the plaintiff is bound to shew, that he received the bill, *bona fide*, in the regular course of mercantile business, and paid a full considaration for it. This he has failed to do. [The testimony of *Samuel Dexter* and *T. B. Fenner* was here adverted to and commented on.] 3 *Kent*, 79. 81, 2. *Brown* v. *Davis*, 3 *Term Rep.* 80. *Ayer* v. *Hutchins*, 4 *Mass. Rep.* 370. *Thompson* v. *Hale*, 6 *Pick.* 259.

5. That the evidence adduced on the trial supported the finding of the jury on all the points submitted to them ; or, at any rate, that the verdict was not manifestly against such evidence, and if so, a new trial will not be granted. [Here the counsel went into a minute and critical examination of the evidence.]

In reply, it was said, that the plaintiff took the bill in question, without any knowledge or reason to suspect, that there was any defect of title in *Dexter*. He took it in the regular course of business, as mercantile paper. It came into his hands, *bona fide*, before it was due. The defendants admitted, that they had *Dexter's* money in their hands, to the full amount of this paper. No proof should, therefore, be received, of the facts claimed in defence.

But if the plaintiff is bound to furnish proof of a consideration, he has done so. His own indorsement of the paper, and getting it discounted, constituted a sufficient consideration. The title to the bill became perfect in the plaintiff, at the time when the bills were discounted, and *Dexter* received the

money ; and if it might then be defeated, it could not be after-wards, by any new contract, much less by an offer by the plaintiff, which was never accepted by *Dexter.* The plaintiff, at least, had a *lien* upon the bill ; which entitled him to sue upon it. *Bosanquet* & al. v. *Dudman,* 1 *Stark. Rep.* 1.

WAITE, J.   1. The bill of exchange in this case, was made payable *at either Bank,* in *Providence,* and demand of payment was made at one of them.   The defendants say, this was not sufficient, because the plaintiff had not previously given the defendants notice, where the demand would be made.   It seems, that the legal construction given to such contract, is, that the bill will be paid at either of the banks which the holder may select.   *North Bank* v. *Abbot,* 13 *Pick.* 465.   *Beeching* & al. v. *Gower, Holt, N. P.* 313.   With respect to the previous notice, it is not required by the express terms of the bill ; nor has any local usage upon that subject been shewn ; and we know of no rule of law requiring it. If the parties wish for more certainty as to the place of payment, let them be more explicit in the bill.

But further, this action is not against the drawer, or an indorser, but against the acceptor.   The rule is well settled, that in a suit against the acceptor of a bill, or the maker of a promissory note, payable *generally,* it is not necessary to aver or prove any presentment for payment.   The action itself, is a sufficient demand.   So it has been determined, by this Court, that in an action against the maker of a note, payable *at a particular place,* a demand at the place specified, need not be averred in the declaration.   *Eldred* v. *Hawes,* 4 *Conn. Rep.* 465.   The same doctrine has very recently been recognized, by the supreme court of the *United States,* upon a review of most of the authorities, *English* and *American.   Wallace* v. *McConnel,* 13 *Peters,* 136.   The same rule has been adopted in *New-York, Massachusetts,* and in various other states in the *Union,* and may now be considered as the law in the *United States* upon this subject.   *Caldwell* v. *Canady,* 8 *Cowen,* 271.   *Payson* v. *Whitcomb,* 15 *Pick.* 212.   *Carley* v. *Vance,* 17 *Mass. Rep.* 389.   *Ruggles* v. *Patten,* 8 *Mass. Rep.* 480.   *Weed* v. *Van Houten,* 4 *Halst.* (*N. J.*) 189.   And in this respect, there is no distinction between the acceptor of a bill, and the maker of a promissory note.   *Wallace* v. *Mc-*

*Connel. Foden* & al. v. *Sharp,* 4 *Johns. Rep.* 183. *Wolcott* v. *Santvoord,* 17 *Johns. Rep.* 248.

The instruction, therefore, given by the court to the jury, that the plaintiff was not precluded from a recovery in consequence of not having given the defendants notice that payment would be demanded at the *Blackstone Canal Bank,* was strictly correct and proper.

2. The plaintiff claims, that the court erred, in not rejecting the testimony of the drawer. It is not claimed, nor can it be with propriety, that he was not a competent witness, unless it be shown, that there was a balance of interest in favour of the party calling him. For it is now well settled,in this state and in *England,* that the drawer of a bill is a competent witness, in a suit between the indorsee and acceptor, unless there are circumstances in the case shewing a greater interest in favour of one party than the other ; (*Townsend* v. *Bush,* 1 *Conn. Rep.* 260. *Jordaine* v. *Lashbrooke,* 7 *T. R.* 104. *Brard* v. *Ackerman,* 5 *Esp. Rep.* 119. *Dickinson* v. *Prentice,* 4 *Esp. Rep.* 32. *Copley* v. *Corner,* 4 *Car. & P.* 21.) although it is admitted, that this principle has not been adopted, by the supreme court of the *United States,* nor in *Massachusetts, New-York,* and several other states. *Bank of the Metropolis* v. *Jones,* 8 *Peters,* 12. *Bank of the United States* v. *Dunn,* 6 *Peters* 57. *Churchill* v. *Suter,* 4 *Mass. Rep.* 156.

But the ground of the objection is, that the drawer, in case of a recovery by the plaintiff, would be liable to the defendants, not only for the debt that might be recovered, but for the costs of the present suit. The bill in question was not accepted for the accommodation of the witness, but of the defendants ; and there is no agreement, express or implied, that he should pay the bill, and save the defendants harmless. Nor do we discover anything in his conduct justly making him liable for the costs of the suit, if the defendants should be subjected.

The bill was accepted, and placed in the hands of the plaintiff, for the purpose of enabling him to get it discounted, and to pay over the avails to the defendants. When he delivered it, with other paper, to the plaintiff, upon his offer to get them discounted at the *Canal Bank,* he was acting within the scope of his authority. Had the plaintiff paid over the avails of the bill to the witness, the witness would have become immediately liable to the defendants for the money so

*Windham,*
*July, 1839.*

Jackson
*v.*
Packer.

received : and they could have sustained a suit against him for it. In *Bagnall* v. *Andrews*, one *Woodbridge* drew a bill on the defendant, to whom he had been sending goods for sale ; and the defendant accepted it ; neither party knowing the state of account between them. It turned out that at the time of the acceptance, the drawer was indebted to the defendant. The drawer afterwards indorsed the bill to the plaintiffs. The court held, that the bill so drawn and accepted, could not be treated as an accommodation bill ; that there was no implied undertaking, on the part of the drawer, to indemnify the acceptor against the costs of the action ; and he was, therefore, a competent witness. 7 *Bing.* 217.

But it is said, that the drawer in this case, did not, at the time of the transfer to the plaintiff, disclose the nature of the transaction between him and the defendants. But there was nothing in the arrangement with the plaintiff, requiring that disclosure. The bill was delivered to the plaintiff for the purpose of enabling him to get it discounted, and pay over the avails to the drawer. It could make no difference with the plaintiff, so far as the execution of that arrangement was concerned, whether the bill belonged to the drawer, or to the defendants. He would have been just as safe, in the one case as in the other. The drawer was authorized to receive the proceeds of the bill ; and payment to him would have been as effectual as if made to the defendants.

3. The instruction given to the jury respecting the plaintiff's right to recover, was entirely correct. In consequence of the transfer of the two bills and note to the plaintiff, he was induced to pay the drawer 975 dollars. He had, therefore, an interest in those securities, to that extent. But the jury have found that he has been repaid that sum. If he is permitted to recover more, it must be for the benefit of the drawer. But nothing was ever due the drawer from these defendants. Why then should the plaintiff recover ? It is said, that his object is, to indemnify himself for his indorsement of the bill drawn upon *Jesup, Swift & Co.* But was he induced to make that indorsement in consequence of the transfer of this bill to the plaintiff? That is not pretended. What equity is there in allowing the plaintiff to recover of the defendants that which they do not owe, either to the plaintiff or the drawer ? We can discover none. Had the plaintiff paid the drawer the

full consideration of the bill, he would be entitled to recover the full amount of the defendants. But he has in effect paid no consideration, the money advanced having been re-imbursed from the other securities. In justice, therefore, he ought not to recover.

*Windham,*
*July, 1839.*

Jackson
*v.*
Packer.

4. With respect to the finding of the jury, we think, that upon the evidence relating to the *Fenner* note, their verdict is right. And as to the question whether the *S. Newton Dexter* note was received in *payment* of his acceptance, or only as *collateral security*, there was much conflicting testimony; and we do not discover such a preponderance in favour of the plaintiff's claim, as will justify us in granting a new trial, especially as it appears, that the plaintiff had so far appropriated the note to his own use, as to cause it to be discounted for his own benefit. *Bulkley* v. *Waterman*, 13 *Conn. Rep.*

For these reasons, we think a new trial ought not to be granted.

The other Judges were of the same opinion.

New trial not to be granted.